UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF BOSTON COLLEGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No.: 4:24-cv-1523 HEA |
| vs. ) | |
| ) | |
| URSHAN UNIVERSITY, INC., ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff Urshan University, Inc. ("Urshan") files this Memorandum in Opposition to the Preliminary Injunction Motion (Doc #12) and Memorandum in Support (Doc. #13) filed by Plaintiff, Trustees of Boston College ("Plaintiff"). This dispute involves 13 Windows which are fixtures (and have been for over one hundred years) to the former St. Stanislaus Chapel owned by Urshan (the "Windows"). The Court should deny the Motion for Preliminary Injunction.

The parties agree on one thing—that the Windows should be preserved. Plaintiff wants to rip out the Windows, transport them somewhere for storage and refurbish the Windows with the end game that the Windows are moved to Boston. Urshan wishes to preserve the St. Stanislaus Seminary including the Chapel and the Windows as part of St. Louis History. Regardless, the Windows are fixtures of the Chapel[1] and should not be ripped out during the pendency of this suit which would alter the *status quo ante*. Likewise, Plaintiff's refurbishment of the Windows during pendency of the case changes the *status quo ante* between the parties.

---

[1] The "Chapel" refers to the former Saint Stanislaus Chapel located at 700 Howdershell Road, also known as part of the St. Stanislaus Seminary.

In the main, Plaintiff seeks the full relief demanded in its Complaint for the Windows. Beyond this, Plaintiff invents the argument that Urshan, a **non-movant**, must post a bond and pay for any refurbishment of the Windows and other costs. (Doc. #12). There is no requirement that Urshan pay for refurbishment of the Windows under any read of the alleged Agreement between the parties. Regardless, the rules are clear that the movant post bond —not Urshan.

## FACTS

### I.   ST. STANISLAUS SEMINARY IS HISTORIC PROPERTY.

Urshan is a private, not for profit university and seminary dedicated to the Apostolic community. (Ex. A, Jennie Russell Decl. ¶¶1-4). Urshan owns the St. Stanislaus Seminiary in Hazelwood. Urshan or its predecessor entities have owned the property since 1971. (Complaint Doc.#1 and Answer Doc.#16, ¶3). The 13 Windows are affixed in the Chapel at the Seminary. Urshan seeks to have the St. Stanislaus Seminary maintain its integrity as a cornerstone of the Hazelwood community for redevelopment and preservation of the Windows and the entire campus. (Ex. B, Vincent W. Ebersoldt Decl.¶4; Ex. A, Russell Decl. ¶¶5-6 & 16-17, 19). Two of the five buildings on the campus were placed on the National Historical Register of Places ("NHRP") in about 1972. (*Id.* ¶14). The Chapel and two other buildings were not nominated then because they were slightly less than 50 years old. (*Id.* ¶14).

Urshan engaged Mr. Ebersoldt for his renowned expertise as an Architect, Historic Consultant, developer and for work on historical properties and historic tax credits. (*Id*. ¶¶1-4; Ex. A, Russell Decl. ¶¶16-17). On behalf of Urshan, he has been involved with the NHRP seeking to obtain designation of the property as Historical and to obtain historic tax credits to redevelop the property. (Ex B, Ebersoldt Decl. ¶¶12-15).

2

Indeed, the Chapel and its two residential wings are now eligible for placement on the NHRP and both state and federal officials support a historical registration of the Chapel and two wings. (*Id.* ¶¶12-15). The Windows affixed to the Chapel are critical to the historical integrity of the property and to the eligibility of the Chapel and the two residential wings under the NHRP. The chances of receiving the designation and the receipt of historic tax credits would be materially diminished if the Windows are ripped out. Indeed, without historical tax credits to redevelop St. Stanislaus Seminiary, the structures would most likely have to be demolished completely destroying crucial Jesuit history in the Midwest and destroying the value of the entirety of the campus. (Ex A, Russell Decl. ¶¶19 &20; Ex. B, Ebersoldt Decl. ¶¶12-15).

In addition to the historical register authorities, the Interim City Manager of the City of Hazelwood has stated the City's public interest in saving and redeveloping St. Stanislaus Seminary. The City acknowledged that "the impact on history and the significance of the buildings are of paramount interest to the city and the region." In fact, the City's interest is to maintain the "vital stained glass windows" and that the Windows be "kept on the property and maintained." (Ex. B, Ebersoldt Decl. ¶8, Ex. 1, City letter). Likewise, Urshan is desirous of having the entire property redeveloped to maintain and protect the property for historical purposes. (Ex. A, Russell Decl. ¶¶16-17, 19 & 20). To this end, the ability to save the property is far too important to the Jesuit Order, the religious history of the Midwest, the City of Hazelwood, and its residents than a "gift" of the Windows and Plaintiff's desire to obtain these "collectibles." This would also preserve and maintain the value of the property. (*Id.* ¶¶17-20; Ex. B, Ebersoldt Decl. ¶¶14-15, 17).

## II.     THE ALLEGED GIFT OF THE WINDOWS.

As background for this dispute, beginning in November 2023, Plaintiff, through Father Beaumier, reached out to Urshan concerning the Windows. (Ex. A, Russell Decl. ¶9). Urshan informed him that it could not "gift" the Windows because Urshan was seeking a buyer for the property and a developer. *(Id.* ¶10). It was discussed that any offer of the Windows was a "gift" and a modest financial gift donation would be made to Urshan by Plaintiff. Urshan always understood that the concept was donation and gift, *i.e.*, a gift for a gift. (*Id.* ¶¶9, 17-18).

In July 2024, Father Beaumier raised Plaintiff's gift/donation offer to Urshan to $25,000.00. (*Id.* ¶10). At that time, Urshan notified Father Beaumier that another party (G.C. Grewe) had agreed in writing to a donation of $25,000 to Urshan in exchange for the gift of a couple of the Windows at issue. (*Id.* ¶¶12-13). The Grewe Agreement dated March 2024 was practically identical to the one at issue here—a donation to Urshan for a gift of certain Windows from the Chapel. (*Id.* ¶12, Ex. 1).

Undaunted, Father Beaumier pressured Urshan to "reverse" the Grewe Agreement and urged Urshan to reimburse Grewe for his $25,000.00 donation for the two Windows. (*Id.* ¶13, Ex. 2 email). In discussions between the parties, Father Beaumier knew that gifts can be revoked/rescinded before they were completed through delivery of the "gifted" items. (*Id.* ¶¶14, 15). To this end, Urshan has always viewed the Grewe Agreement and the alleged Agreement with Plaintiff as revocable gifts. (*Id.* ¶18).

4

**ARGUMENT**

The Court should deny the preliminary injunction motion.

I. **THRESHOLD ISSUES PRECLUDING A PRELIMINARY INJUNCTION.**

    a. **The Court Lacks Subject Matter Jurisdiction.**

The Court lacks subject matter jurisdiction over this diversity case. 28 U.S.C. §1332.[2] If the value of property sought is questioned for purposes of the amount in controversy, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence. *James Neff Kramper Fam. Farm Partnership v. IBP, Inc*., 393 F.3d 828, 831 (8th Cir. 2005).

Plaintiff admits that the alleged consideration to Urshan of $27,000.00 but baldly claims that the value of the Windows exceeds $75,000.00. Plaintiff presents no other evidence as to the value of the Windows other than the Windows' value lies in their history. (Doc. #13, p. 11). Therefore, in claiming specific performance without such evidence of the value, the Court lacks subject matter jurisdiction under 28 U.S.C. §1332. *See Carrick Trucking, Inc. v. Lamberth*, 2011 W.L. 1085616 (W.D. Ark. 2011).

An illustrative case is *Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046 (11th Cir. 1993). In *Bullard*, the Court held that the fair market value of the Property in a specific performance case controls over the contract price for purposes of determining the amount in controversy under §1332. Importantly, evidence was adduced showing the precise fair market value of the property for which plaintiff sought specific performance. *Id*. at 1047-48. Without Plaintiff

---

[2] In its Complaint (Doc. #1). Plaintiff asserts subject matter jurisdiction under 28 U.S.C. §1333 (Complaint ¶10); however, that section is inapplicable to this case. For purposes of this response, however, Urshan believes that a fair reading of the Complaint demonstrates that Plaintiff relies on diversity jurisdiction under 28 U.S.C. § 1332.

5

adducing evidence of the fair market value for the Windows beyond $27,000, the Court lacks subject matter jurisdiction under 28 U.S.C. §1332.

      b.      **The Mortgage Holder is a Necessary Party.**

Under Fed.R.Civ.P. 19, the Court should dismiss Plaintiff's Complaint for failure to join a necessary party or order the missing party joined in the lawsuit. The United Pentecostal Church Development Fund, Inc. d/b/a Church Loan Fund (the "Fund") has a mortgage on the subject Property, including the Chapel and the Windows. The Fund has advised that it does not consent to removal of the Windows because it would impair its collateralization for the loan to Urshan. (*See* Ex. C, Declaration of Jeffrey B. Hunt, Ex. 1 (letter); Ex. A, Russell Decl. ¶¶21-25, Ex. 3, 4 and 5, including Deed of Trust and loan documents).

Regardless, the Fund must be a party to the within litigation. *See Republic of Philippines v. Pimentel,* 553 U.S. 851, 855 (2008)(noting the changes to Rule 19). Rule 19 addresses distinct the factors for determination that a party's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Fed. R. Civ. P. 19(a)(1)(A) & (B). Both of these factors are in play—the Fund has a lien on the St. Stanislaus Seminary campus, which includes fixtures such as the Windows and has a right to enforce same to protect its interest. Second, Urshan may be subject to a separate lawsuit involving the Fund or Plaintiff could be subjected to a suit by the Fund for return of the Windows.

In this diversity case, the Court should look to state law in determining whether an outside party has a sufficient interest in a controversy to require joinder. *Dore Energy Corp. v. Prospective Inv. & Trading Co.,* 570 F.3d 219, 231 (5th Cir.2009); *Shell W. E & P Inc. v.*

*Dupont,* 152 F.R.D. 82, 85 (M.D.La.1993). To this end, the Missouri Supreme Court has held that the proper and complete adjudication of a dispute involving real property cannot be made in the absence of the persons owning interests in the property affected. *See generally Empire District Electric Co. v. Coverdell*, 484 S.W.3d 1 (Mo.App. 2015); *In re: Bridge Info. Serv., Inc.*, 288 B.R. 548 (E.D.Mo. 2001). Assuming, *arguendo*, that Plaintiff has a claim to the Windows, they are still encumbered by a deed of trust, which interest is superior to any claim of Plaintiff. *See generally La Near v. Citimortgage, Inc.*, 484 S.W.3d 372 (Mo.App. 2016).

**II.**     **THE COURT SHOULD DENY PLAINTIFF'S MOTION**.

    **a.** **An Injunction Would Impermissibility Alter the *status quo ante*.**

At the outset, Plaintiff blithely ignores the well-known reason for a preliminary injunction: to maintain the *status quo ante*. Plaintiff seeks to remove the Windows, store them at some undisclosed location and refurbish them during the pendency of the suit. (Doc. #12, Relief Requested). This results in a drastic change to the Windows and, indeed the entire St. Stanislaus Seminary campus which would materially diminish any chance for NHRP designation and historic tax credits to redevelop the property and render the property virtually worthless because of the cost to rehabilitate and redevelop the property without historic tax credits. (Ex. B, Ebersoldt Decl. ¶15; Ex A, Russell Decl. ¶¶7-8). Moreover, there is a substantial risk of damage to the Windows if removed. (Ex. B, Ebersoldt Decl. ¶¶5-6).

A preliminary injunction is an extraordinary remedy "never awarded as of right." *Winter v. Nat. Res. Defense. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Munaf v. Geren*, 553 U.S. 674, 689 (2008)("[a] preliminary injunction is an 'extraordinary and drastic remedy"). Plaintiff cites

no cases allowing the draconian relief of ripping out and moving the Windows.[3]  The *status quo ante* is defined as the last peaceable uncontested status existing between the parties before the dispute developed. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005).

It is beyond cavil that a preliminary injunction should not irreversibly afford Plaintiff all the relief it could recover at trial. *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1247-48 (10th Cir. 2001); *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir.2004)("*status quo*" does not mean the situation existing at the moment the law suit is filed, but the last peaceable uncontested status existing between the parties before the dispute developed).; *Tumey v. Mycroft AI, Inc*., 27 F.4th 57 (8th Cir. 2022).

In this case, the *status quo ante* is that the Windows remain as fixtures in the Chapel during the pendency of the litigation without alteration. *Cf. Charles D. Jones Co., Inc. v. Cliff Manor, Inc*., 668 S.W.2d 613 (Mo.App. 1984)(defining fixtures).

### b. The *Dataphase* Factors.

In deciding a motion for preliminary injunction, the Court should consider four factors delineated in *Dataphase Sys., Inc. v. C.L Sys., Inc*., 640 F.2d 109, 114 (8th Cir. 1981). No one single factor is in and of itself dispositive. *Calvin Klein Cosmetics v. Parfums de Coeur, Ltd*., 824 665, 667 (8th Cir. 1987); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 988 F.2d 61, 64 (8th Cir. 1993); *Dakota Indus., Inc. v. Ever Best, Ltd*., 944 F.2d 438, 440 (8th Cir. 1991).

---

[3] There is a less intrusive and less damaging method to protect the Windows during the pendency of this suit. The Architect, Mr. Ebersoldt, recommends boarding up the Windows during the pendency of the lawsuit at Plaintiff's costs. (Ex B, Ebersoldt Decl. ¶¶6 & 16- 17). Alternatively, Urshan is seeking grant funds from Save America's Treasures to cover the cost of boarding up the Windows. *(Id.* ¶¶7 & 16). Urshan represents to the Court that it will not transfer the Windows during the pendency of the lawsuit.  This would preserve the *status quo ante* to where the parties were before the dispute arose.

In formulating a preliminary injunction, the court exercises its discretion and judgment in light of the "equities of a given case [and] the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579–80 (2017). The "court need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case." *Id.* at 580; *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). [4] When a party seeks substantially the same relief it would obtain after a trial on the merits, a movant, as Plaintiff here, does not meet the "heavy" burden for an injunction. *Dakota Indus., Inc. v. Ever Best, Ltd.*, 944 F.2d at 440.

c. **Likelihood of Success on the Merits:  Contested Issues.**

The first *Dataphase* factor concerns likelihood of success on the merits. A preliminary injunction does not lie where "the likelihood of success on the merits is not clear, with conflicting predictions presented by the parties." *Sanborn Mfg. Co v. Campbell-Hausfeld/Scott Fetzer Co.*, 828 F.Supp. 652, 657 (D. Minn. 1993). The mere likelihood Plaintiff ultimately will prevail "is meaningless in isolation...[and] must be examined in the context of the relative injuries to the parties and the public." *Dataphase*, 640 F.2d at 113, *quoted in General Motors Corp. v. Harry Brown's LLC*, 563 F.3d 312, 318-19 (8th Cir. 2009).

Here, the gift of the Windows has been revoked. A plain reading of the September 9, 2024, alleged Agreement states the future intent of the "gift" requires "Boston College shall take title to the windows upon taking possession of them." Plaintiff has not taken possession of the Windows and, therefore, has no claim to them because this "gift" was revoked or rescinded. If the gift regards the future giving, it is a mere promise which cannot be enforced. *Scottish Rite Temple Ass'n v. Lucksinger*, 231 Mo.App. 486, 488, 101 S.W.2d 511 (Mo.App. 1937); *In re*

---

[4]As discussed, *supra* n.3, the Court can mold less intrusive relief.

9

*Estate of Piper*, 676 S.W.2d 879 (Mo.App. 1984); *Trustees of La Grange Maile & Femail College v. Parker*, 200 S.W.663 (Mo.App. 1918). Certainly, a fact issue is presented for the trier of fact, a jury, to determine whether a valid gift exists. *Willis v. Whitlock*, 139 S.W.3d 643, 653 (Mo.App. 2004).; *Estate of Heidt*, 785 S.W.2d 668, 670 (Mo.App. 1990). *See Wantuck v. United Savings & Loan Ass'n*, 461 S.W.2d 692, 694 (Mo. banc 1971).

Plaintiff (Doc. #13 pp. 10-11) relies heavily upon *Sedmak v. Charlie's Chev., Inc.*, 622 S.W.2d 694 (Mo.App. 1981) to argue that the remedy of specific performance must be granted now for the Windows at this early stage of the case. *Sedmak* is inapposite. In *Sedmak*, the Court ordered specific performance for the delivery of personal moveable property—cars. The award and the order to specifically perform was based upon a full trial on the merits and did not arise in the injunction context. *Sedmak* does not support the notion that preliminary injunctive relief is available to Plaintiff to rip out the Windows, fixtures, before a judgment on the merits.

### d. Irreparable Harm is Questionable.

The second *Dataphase* factor requires movant to "show the threat of irreparable harm." 640 F.2d at 114. Plaintiff argues that it may suffer irreparable harm without the entry of a preliminary injunction requiring removal of and the extraordinary step of refurbishing the Windows. Urshan understands Plaintiff's position that the Windows have suffered damage and deterioration over the past one hundred years. However, this can be remedied through less intrusive preservation methods offered by Urshan's Architect, Mr. Ebersoldt, as discussed previously. *See* nn. 3&4, *supra*.

Ripping out the Windows would damage Urshan and the very value of the entire St. Stanislaus Seminary. As noted above, removing the Windows could result in damage to the Windows themselves. Further, as discussed above, as a lienholder, the Fund has a claim to the

10

Windows (along with the entirety of the St. Stanislaus Seminary campus). These rights of Urshan and the Fund are irreparably harmed if the Court grants the requested preliminary injunction.

   e. **Balance of Equities Favors Urshan.**

The third *Dataphase* factor requires consideration of the balance between the harm to the movant and the injury granting the injunction will inflict on other interested parties. Thus, the balance of the harm to the parties is measured against any competing irreparable injury and thus the Court should consider likelihood of success, not in isolation" but in the context of the relative harm to parties and the public. *Sharp v. Parent in Comm. Action, Inc.*, 172 F.3d 1034 (8th Cir. 1999), quoting *Dataphase*, 640 F.2d at 113. The balance of harm tilts towards Urshan.

Nonetheless, even if turns out that there is an enforceable Agreement (which is denied), that does not entitle Plaintiff to the extraordinary and unprecedented relief of ripping the Windows out of the Chapel, taking them to an undisclosed location for "storage" and refurbishing the Windows.[5] The Plaintiff's plan for removal of the Windows carries a substantial risk of damage the Chapel structure and the Windows themselves. (Ex. B, Ebersoldt Decl. ¶¶5 & 6). Although Urshan does not generally take issue with the condition assessment of Mr. Frei concerning the Windows, there is a notable risk of harm in removal of the Windows due to the deterioration of the Windows, structural and physical impact on the Chapel, as well as the risk to the Windows themselves. (*Id.* ¶16).

Beyond this, temporary removal of the Windows may require a "Commercial Renovation Permit" from the City of Hazelwood. (*Id.* ¶9). However, if the removal of the Windows is permanent, then a "Level 2 Alteration" would most certainly require a "Commercial Renovation

---

[5] As noted *supra.* refurbishing the Windows is the sole responsibility of Plaintiff under the alleged "Agreement." Any changes to the Windows would alter the *status quo ante* between the parties and allowing such changes would give Plaintiff relief beyond what it could recover in the case.

11

Permit" subject to the requirements of Chapter 8 of the International Building Code—meaning required fire, safety, life safety, egress, security and other compliance that could reach $500,000.00 for the work required. (*Id.* ¶¶9-11). Further, the St. Stanislaus Seminary would be rendered nearly without value, probably would require demolition, and there is a risk that this would materially diminish any opportunity for registration as a Historic property and any concomitant tax credits to save the Chapel and the entire property. (*Id.* ¶¶14-15).

Further, in balancing the equities, the Court can look at the conduct of the parties. Unclean hands applies "when the plaintiff's improper conduct is the source, or part of the source, of his equitable claim." *Kay v. Vatterott*, 657 S.W.2d 80, 83 (Mo. App. E.D. 1983). "What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts." *Id.* The unclean hands doctrine "is not an automatic or absolute bar to relief; [rather,] it is only one of the factors the court must consider when deciding whether to exercise its discretion to grant an injunction. 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §2946 (3d ed. 1998).

Here, Plaintiff' pushed for "reversal" or revocation/rescinding of a nearly identical "gift" agreement, the Grewe Agreement, for two of the Windows in exchange for a donation. It is ponderous that Plaintiff contends that it now has an enforceable Agreement when at the same time making sure that an almost identical agreement was revoked/rescinded. If nothing else, this certainly demonstrates that the Plaintiff knows that a gift can be revoked/rescinded before the object of the gift is delivered.

The balance of harms/equities weighs in favor of Urshan.

### f. The Public Interest is Best Served by Saving the St. Stanislaus Seminary and the Windows as Historic Properties in the St. Louis Area.

The final *Dataphase* factor considers the public interest. *Dataphase*, 640 F.2d at 113-14. The Court must balance the harms of the public interest and the other parties litigant. *GMC v. Harry Brown's LLC,* 563 F.3d at 320. The public interest goes far beyond protection of alleged private contracts as Plaintiff argues—in the broader scheme, the Public interest should be protected by denial of the preliminary injunction. Under this factor, it is not about "harm" to the public interest—but the injunction must further the public interest. The public interest is to preserve and protect historical properties without a property being rendered virtually valueless.

In fact, the entire region suffers from buildings which cannot be renovated or can be only at a prohibitive cost. As noted before, if the Windows are ripped out and taken, there is a materially diminished chance of financing to renovate the St. Stanislaus Seminary without the historic tax credits. Indeed, the public has an interest in preserving the St. Stanislaus Seminary as do the national and state historic preservation entities.

As previously noted, the City of Hazelwood, on its behalf of its citizens, supports placement of the St. Stanislaus Seminary on the NHRP. The City has opined that "the impact on history and the significance of the buildings are of paramount interest to the city and the region." Further, the City has stated that the "vital stained glass windows" must be kept on the property.

Beyond this, as Mr. Ebersoldt testified, the St. Stanislaus Seminary is historically significant locally to Hazelwood and the Jesuit Order throughout the Midwest. Saving the property is "far too important to the Jesuit Order, the Religious History of the Midwest, the City of Hazelwood" and its residents. In short, removal of the Windows probably results in loss of the entire St. Stanislaus Seminary property.

### III.     PLAINTIFF MUST POST A BOND.

In the event that the Court fashions a preliminary injunction order, Plaintiff should be required to post a bond. Rule 65(c), Fed.R.Civ.P. states in part that a preliminary injunction may issue "only if the movant gives security in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." *Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989)(bond should be sufficient to protect the defendant in the event a trial on the merits results in a decision in favor of defendant)

The bond should be established at least for $500,000 for the cost of compliance with City of Hazelwood permitting and other costs—including possible damage to the Windows and the entirety of the value of the St. Stanislaus Seminary. Further, the entirety of the St. Stanislaus Seminary may be rendered valueless and unsaleable. The property's fair market value is at least $2,333,000 with the Windows in place.  (Ex. A, Russell Decl. ¶7). Without historic tax credits, the chance of redeveloping the Chapel and the entirety of St. Stanislaus Seminary would be materially diminished.

Incredibly, in an amazing sleight of hand, Plaintiff urges the Court that Urshan—the **defendant**-to obtain a bond for the injunction. (Doc. #12, relief points d, f, and g). Plaintiff alleges that Urshan should post a bond to ensure that Urshan is not unjustly enriched by Plaintiff's planned alteration of the Windows during the pendency of the lawsuit.  (Doc. #13 at p.2). There is no such claim in this case. If Plaintiff is granted relief and refurbishes or makes other changes to the Windows, it is on Plaintiff's dime—there is nothing in the alleged Agreement that Urshan is responsible for refurbishing the Windows. If Plaintiff prematurely refurbishes the Windows, it is at Plaintiff's cost, not Urshan's. This demonstrates why the *status quo ante* needs to be preserved.

In any event, it is fundamental that the movant, in this case, Plaintiff, post a bond. Rule 65(c), Fed. R. Civ. P., is clear and unambiguous that: "[t]he court may issue a preliminary injunction…. only if the **movant** gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." (Emphasis added).

## CONCLUSION

The Court should deny Plaintiff's Motion for a Preliminary Injunction. In the event the Court grants some type of injunctive relief, it should be to maintain the *status quo ante* leaving the Windows in place in the Chapel until a final judgment. If an injunction is granted, Urshan requests that the Court set a bond in an amount charged to Plaintiff. Urshan also prays for such other and further relief as the Court deems just and proper in the premises.

Respectfully submitted,

**ROSENBLUM GOLDENHERSH, P.C.**

BY:   /s/ Jeffrey B. Hunt
Jeffrey B. Hunt, #33349MO
7733 Forsyth, 4th Floor
Clayton, MO   63105-1812
(314) 726-6868
(314) 726-6786 Facsimile
jhunt@rgsz.com

*Attorneys for Defendant Urshan University, Inc.*

15

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the following on this 10th day of January 2025 via operation of the Court's electronic filing system:

Winthrop B. Reed, III
Kolton C. Ellis
Lewis Rice LLC
600 Washington Ave., Ste. 2500
St. Louis, MO 63101

                                                   /s/ Jeffrey B. Hunt