IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF BOSTON COLLEGE, | ) |
| | ) |
| Plaintiff, | ) Case No. 4:24-cv-1523 (HEA) |
| v. | ) |
| | ) |
| URSHAN UNIVERSITY, INC. | ) |
| | ) |
| Defendant. | ) |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Boston College's[1] opening Memorandum showed that a preliminary injunction is necessary and warranted to protect its rights in an Agreement with Defendant Urshan for the transfer of 13 historic, stained-glass Windows. The Agreement is enforceable, Urshan breached it, specific performance is the proper remedy, and trespassers and the elements threaten imminent harm to both Boston College and the public interest unless the Motion is granted.

Urshan's Memorandum in Opposition to the Motion, (ECF No. 22, "Opposition"), deploys inflammatory hyperbole to paint Boston College as overreaching and unfair. In Urshan's world, the Windows lack sufficient value to support subject matter jurisdiction, (*id.* at 5); the Motion requests "draconian" relief that would impact Urshan's mortgage lender, (*id.* at 6–8); Boston College, with "unclean hands," seeks to enforce a gratuitous promise that has been revoked, (*id.* at 9, 12); Boston College wants to "rip out" the Windows from the Chapel, (*id.* at 1, 3, 8, 10, 11, 13), upsetting the *status quo ante* "beyond cavil," (*id.* at 8), while Boston College's "desire to obtain . . . collectibles" threatens every private and public interest imaginable, (*id.* at 3).

In the real world, *none* of that is true. The Court should look past the rhetoric to reality—including the reality that Urshan has conceded the merits of the case. It has waived objection to

---

[1] All Defined terms in Boston College's opening Memorandum (ECF No. 13) retain their meanings herein. Record citations refer to CM/ECF pagination, irrespective of internal pagination.

Boston College's reliance-based argument that the Agreement is enforceable. It further admits an independent breach through a material misrepresentation that the Windows were free and clear of any mortgages or liens. And Urshan fails to show its lender is a necessary party whose absence from the action would require the Court to deny Boston College relief.

Urshan further ignores caselaw and evidence in the record showing that Boston College has met the amount in controversy requirement. It relies on unreliable hearsay to contrive a dispute between Urshan and its supposedly nonconsenting lender, the United Pentecostal Church Development Fund (the "Fund")—even though the chairman of the Fund's board also sits on Urshan's Board of Directors and has apparently not objected to any of Urshan's asset sales until (conveniently) after this case was filed. It inaccurately frames the *status quo ante* and misrepresents the relief Boston College seeks, which is well within the Court's discretion to issue. Urshan's declarations are rife with hearsay, conjecture, and impertinent jibes that the Court should dismiss out of hand. To the extent Urshan's declarations *are* admissible, they confirm that Boston College should prevail: Urshan's architect agrees that the Windows are in peril, but his proposed alternative relief is infeasible and insufficient to protect the Windows while the case proceeds. The Motion should be granted.

## ARGUMENT

Urshan's Opposition raises two threshold issues to relief: subject matter jurisdiction and failure to join a necessary party under Fed. R. Civ. P. 19. But Boston College has submitted sufficient evidence—confirmed by Urshan's own declarations—for the Court to conclude that the amount-in-controversy requirement has been met. By contrast, Urshan has not submitted *admissible* evidence to carry its burden of showing the Fund is a necessary party.[2]

---

[2] Boston College objects to the consideration of the declarations Urshan submitted in connection with its Opposition, for reason detailed more fully in its contemporaneously filed Motion to Strike.

On the merits, Urshan has waived any objection to and ignored Boston College's reliance argument for the Agreement's enforceability, and it has affirmatively admitted to breaching the Agreement by misrepresenting that it had free and clear title to the Windows. Urshan's remaining arguments, dependent on unreliable declarations and misstatements of the law, similarly fail.

1. **The Court Has Subject Matter Jurisdiction**

This is a diversity case. The court has subject matter jurisdiction if: (1) the parties are completely diverse and (2) the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Urshan has admitted the facts sufficient to show complete diversity (*see* ECF No. 16, Answer, ¶¶ 7–8), but it objects that the amount in controversy has not been shown to exceed $75,000. (ECF No. 22, Opposition, at 5.) However, Urshan's argument overlooks both relevant case law and the admissions in its own declarations conceding the Windows' "great value."

In an action for equitable relief, like Boston College's claim for specific performance, "the amount in controversy is measured by the value of the object of the litigation." *James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005) (quotation omitted); *cf. Mopp. v. Franks*, 792 S.W.2d 413, 419 (Mo. Ct. App. 1990) ("Specific performance . . . is purely an equitable remedy[.]"). But the relevant figure for the amount-in-controversy is not the $27,000 that Urshan would receive under the Agreement. Rather, "the amount in controversy is measured by the value *to the plaintiff* of the right sought to be enforced." *Feder. Mut. Ins. Co. v. Moody Station & Grocery*, 821 F.3d 973, 977 (8th Cir. 2016) (emphasis added, citation omitted);

---

In brief, the declarations of Jeffrey Hunt (ECF No. 22-3), Jennie Russell (ECF No. 22-1), improperly inject hearsay about the interests of the Fund, who has not appeared in the action (but could). Further, Vincent Ebersoldt's declaration (ECF No. 22-2) provides no foundation for his competence to assess the work or risk involved in removing the Windows for preservation, and is replete with hearsay from third parties. His declaration also suggests animus against Boston College, which he accuses of "selfishly choosing 'collectibles' over the historic integrity of a far greater landmark that requires these windows to survive." (*Id.* ¶ 19.) Boston College quotes Urshan's declarations here only to emphasize that Urshan's *own* submissions cut against its case.

*accord Mass. State. Pharm. Ass'n v. Fed. Prescription Serv., Inc.*, 421 F.3d 130, 132 n.1 (8th Cir. 1970) (rejecting argument that "the defendant's standpoint" determines amount in controversy).

Urshan argues that Boston College has not provided evidence of the "fair market value" of the Windows.  (ECF No. 22, Opposition, at 6 (citing *Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046 (11th Cir. 1993)).  But the case it cites did not hold any specific type of evidence is necessary to prove value.  In *Occidental*, the Eleventh Circuit held that "[w]hen the value of property sought to be obtained by specific performance exceeds the sum which might be awarded in damages, the amount in controversy is established by the value of the property."  *See* 995 F.2d at 1047.  This holding confirms that the amount in controversy here is not capped at the $27,000 Urshan would receive under the Agreement, but depends on the value to Boston College of owning and possessing the Windows once removed from the Chapel.

Fair market value "typically is defined as the price which the property would bring when offered for sale by a willing seller who is not obligated to sell, and purchased by a willing buyer who is not compelled to buy." *St. Joe Mines Corp. v. State Tax Comm'n of Mo.*, 854 S.W.2d 526, 529 (Mo. Ct. App. 1993).  Urshan and Boston College conducted a voluntary, arm's-length transaction under which Boston College agreed to two obligations: $27,000 for the Windows, and the "expense [of] engag[ing] Emil Frei and Associates . . . to remove" the Windows, which amount to roughly $62,000.  (ECF No. 13-2 at 7, Agreement; *id.* at 3, Beaumier Decl. ¶ 12.)  Thus, Boston College's total obligation amounts to $89,000.  Under Missouri law, "actual sale price" is a permissible indicator of fair market value of property sold in an arm's-length transaction.  *See St. Joe Mines Corp. v. State Tax Comm'n of Mo.*, 854 S.W.2d 526, 529 (Mo. Ct. App. 1993) (allowing that "various methods" can show fair market value, including "actual sale price, comparable sales," and "replacement cost").  The total sales price here shows that "the value to [Boston College] of

4

the right sought to be enforced" exceeds $75,000.  *See Feder. Mut. Ins. Co.*, 821 F.3d at 977.

Urshan's declarations, to the extent they are considered, confirm that the amount in controversy is sufficient.  Urshan has claimed in the declaration of Jennie Russell that the Windows contribute "great value" to the Property, whose total value is approximately $2.3 million.  (ECF No. 22-1 at 2, Russel Decl., ¶ 7.)  According to Urshan, the Windows contribute to *so much* of that value that their removal "could result in the entirety of the campus to be demolished."  (*Id.*)  It is impossible to square this sentiment with the claim that the Windows are worth less than $75,000.  The Court therefore has more than enough reason to find that the value of the Windows exceeds the $75,000 threshold to support subject matter jurisdiction.[3]  *See* 28 U.S.C. § 1332(a).

**2.  Urshan Has Not Shown that Another Party is Necessary to the Action.**

In the Agreement, Urshan specifically "represent[ed] that it owns all right, title and interest in the Chapel, free and clear of liens, mortgages, or claims, and has full power and authority to . . . transfer ownership of the windows to Boston College."  (ECF No. 13-2 at 7, Agreement.)  Now, Urshan opposes an injunction because the Windows apparently *are* encumbered by mortgage obligations, and Urshan *does not* have permission to sell them.  (ECF No. 22 at 6–7; ECF No. 22-1 at 4–5, Russell Decl., ¶¶ 20–22; ECF No. 22-3 at 1, Hunt Decl.)  While Urshan has admitted another, independent breach of the Agreement, it has not shown the Fund is a necessary party.

As an initial matter, Boston College's Motion for a Preliminary Injunction does not—contrary to Urshan's assertion—involve any "irreversibl[e]" relief, (*cf.* ECF No 22 at 8), as the Windows can be restored to the Chapel in the event that Urshan prevails, (*see* ECF No. 13-1 at 4, Frei Decl. ¶ 17 (explaining that a "thorough" restoration of stained glass involves "wholesale

---

[3] If necessary, Boston College is prepared to adduce testimony at a hearing on its Motion that the replacement cost of the Windows far exceeds $75,000.  *Cf. St. Joe Mines Corp*, 854 S.W.2d at 529 (holding "replacement cost" is another permissible indicator of fair market value).

5

removal of the Windows from their frames"). The potential issues concerning non-parties thus need not be resolved at this stage, as Boston College's Motion for a Preliminary Injunction does not seek any final relief that could affect the Fund's ultimate legal rights.

Nor has Urshan shown that Rule 19 requires the Fund to be joined. Rule 19(a)(1) "requires joinder only when the absence of the unjoined party prevents complete relief among the *current parties*." *LLC Corp. v. Pension Ben. Guar. Corp.*, 703 F.2d 301, 305 (8th Cir. 1983) (emphasis added); *see also Quick v. Formula Telecom, Inc.*, No. 4:10-cv-01699-JCH , 2011 WL 572513, at *2 (E.D. Mo. Feb. 15, 2011) (party asserting mandatory joinder bears burden of proof). Even if the Fund has not consented to the transfer of the Windows, Urshan would have no defense against Boston College's breach of contract claim. *See Werner v. Ashcraft Bloomquist, Inc.*, 10 S.W.3d 575, 578 (Mo. Ct. App. 2000) ("[I]f a party to a contract . . . undertakes to perform an act that . . . requires a third party to acquiesce or perform a preceding act, . . . the inability to secure the necessary permission or acts of the third party does not excuse performance of the contract."). The Eighth Circuit has held that joinder is not mandatory under Rule 19(a)(2) where resolving an action "will not impair [the non-party's] ability to sue" a party claiming mandatory joinder to recover what the non-party is owed. *LLC Corp.*, 703 F.2d at 305. Boston College does not seek any relief in this action that would limit the Fund's ability to seek damages from Urshan in a separate action.

Finally, Urshan has not submitted credible, admissible evidence to show that it lacked the Fund's permission to transfer the Windows when the Agreement was signed. The documents Urshan has submitted show only that the Fund—as of December 18, 2024—decided it did "not 'consent' to the removal of the Windows." (ECF No. 22-1 at 4–5, Russell Decl. ¶ 21.) Though carefully worded to suggest retroactive disapproval, even the letter sent by the Fund to Urshan's counsel does not claim Urshan lacked the Fund's consent to sell the Windows *when the Agreement*

6

*was signed*. (*See* ECF No. 22-3 at 2–3, Fund Letter.)  To be clear, the Fund is no disinterested creditor that "happened" to loan Urshan money: Rev. David Bernard, the Chairman of the Fund's board, *also* sits on Urshan's board. (*See* ECF No. 22-1 at 32; <u>Exhibit A</u>, United Pentecostal Church Development Fund, Inc. 2023 Annual Registration, at 2; <u>Exhibit B</u>, Urshan University, Inc. Annual Registration, at 3). In fact, it appears from public information online that Rev. Bernard was President of Urshan until 2018 and is its current Chancellor. *See https://urshancollege.org/about/history; https://urshan.edu/leadership*. It is implausible to think that Urshan, which abandoned the Property in 2019 and has entered multiple agreements to sell various Windows and other property in the Chapel, (ECF No. 22-1 at 3, Russell Decl. ¶ 11), habitually acted without the Fund's knowledge and consent.  The logical explanation for why Urshan's Chief Financial Officer "represent[ed] that [Urshan] . . . ha[d] full power and authority to . . . transfer ownership of the windows to Boston College," (ECF No. 13-2 at 7), is that Urshan *did* have such authority when it signed the Agreement.  At the very least, that is the only conclusion warranted by admissible, credible evidence in the record.  Urshan has not met its burden to show mandatory joinder.

**3. All of the Preliminary Injunction Factors Favor Granting Boston College's Motion.**

As Boston College showed in its opening Memorandum, the four factors governing preliminary injunctive relief all favor granting Boston College's Motion.  Urshan's Opposition ignores relevant case law about the Agreement's enforceability, understates the risk of harm to the Windows without offering any feasible plan to protect them, wrongly claims Boston College has unclean hands, and tries to muddy the water through speculation and hearsay about the public interest.  None of Urshan's objections stand up to scrutiny.

    a.  *Likelihood of Success on the Merits*

Boston College showed two independent grounds to hold that the Agreement is an

7

enforceable contract: (1) a fair reading of the Agreement as a whole shows mutual, reciprocal obligations (consideration), and (2) Boston College detrimentally relied on the Agreement prior to Urshan's purported rescission. (ECF No. 13 at 8–9.) Urshan's Opposition does not even mention that second argument. Although it cites *Scottish Rite Temple Ass'n v. Lucksinger*, for the general proposition that a promise to make a gift is typically revocable, (ECF No. 22 at 9), Urshan fails to acknowledge the proposition for which Boston College *also* cited *Scottish Rite Temple*: "a gratuitous promise may be converted into a valid and enforceable contract, at least where made to a public or charitable institution . . . if, before it is withdrawn, the promisee performs some act, expends some money, or incurs enforceable liabilities . . . in reliance on said promise." 101 S.W.2d 511, 513 (Mo. Ct. App. 1937). (*Cf.* ECF No. 13, at 9.) As Urshan has waived any response to Boston College's reliance argument—which is supported by record evidence—the Court need go no further. *See McCall v. Monro Muffler Brake, Inc.*, No. 4:10-cv-269-JAR, 2013 WL 3418089, at *3 (E.D. Mo. July 8, 2013) (holding parties "waived [an] argument when they failed to address it in their opposition" to movant's motion).

Even if the Court were to consider Urshan's argument that the Agreement merely concerned mutual gifts, Boston College has still shown a substantial likelihood of success on the merits. Under Missouri law, mutual gift agreements can be enforceable—even though each promise in isolation would have been gratuitous and unenforceable. *See, e.g.*, *Moran v. Kessler*, 41 S.W.3d 530, 533 (Mo. Ct. App. 2001) (holding "[a] contract to make mutual wills" enforceable, even though "ordinary wills" are revocable prior to the testator's death (quotation omitted)). Here, the Agreement contained detailed, specific requirements for each party to perform, and no provisions indicating an intent that either party could unilaterally revoke its promise. (*See* ECF No. 13-2 at 7–8, Agreement.) For example, Urshan "agree[d] to exclude the Windows from [a]

8

sale [of the Property prior to the removal of the Windows] and allow for their removal before the sale is closed." (*Id.*)  This contractual language would be surplusage if Urshan could revoke the transfer of the Windows. *See, e.g., Finley v. Williams*, 29 S.W.2d 103, 106 (Mo. 1930). Thus, construing "the terms of [the Agreement] as a whole," the Court should conclude the Agreement is and has always been an enforceable contract. *Lacey v. State Bd. of Regis. For Healing Arts*, 131 S.W.3d 831, 838 (Mo. Ct. App. 2004) (quotation omitted).

Urshan's only other response on the merits is to argue that specific performance is unwarranted because the Windows are fixtures, not unique personalty. (ECF No. 22 at 10.)  That is wrong.  The Agreement states that Boston College will take title to the Windows "upon taking possession of them," only *after* they are removed from the Chapel.  (ECF No. 13-2 at 8, Agreement.)  That shows the parties here agreed to treat the Windows as personalty, not fixtures. *See Leawood Nat'l Bank of Kan. City v. City Nat. Bank & Tr. Co. of Kan. City*, 474 S.W.2d 641, 644 (Mo. App. 1971) ("[A] landowner may enter into a special agreement with another that . . . an object already affixed to the land shall be deemed permanently severed and reacquire the character of personal property.").  Of course, specific performance would be warranted either way—as Boston College pointed out in its Memorandum, "an interest in real property . . . by its very nature is unique" and qualifies for equitable relief such as specific performance. *O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996). (*Cf.* ECF No. 13 at 7).  Likewise, Urshan's objection that *Sedmak v. Charlie's Chevrolet, Inc.*, 622 S.W.2d 694 (Mo. Ct. App. 1981) was not about a preliminary injunction, (ECF No. 22 at 10), misses the point.  What *Sedmak* shows is Boston College's substantial likelihood of success on the merits because it proves the relief requested in the Complaint is appropriate. (ECF No. 1).

    b. *Likelihood of Imminent Harm*

In support of its imminent harm argument, Boston College provided evidence of the

9

Chapel's rapid deterioration, which has accelerated over the past year in part due to (1) vandalism from trespassers to other windows in the Chapel; and (2) water intruding into the Chapel's walls. (*See* ECF No. 13-1 at 8–10, Frei Decl. ¶¶ 32–40.)  Notably, Urshan's own architect "takes no issue with the assessment provided by Emil Frei and Associates in court filings," and indeed *agrees* that "ongoing risk[s]" of "vandalism" and "further deterioration due to weathering / freeze and thaw / moisture remain[.]" (*See* ECF No. 22-2 at 2, Ebersoldt Decl. ¶ 5.)  Yet aside from raising irrelevant arguments about the Fund and mischaracterizing Mr. Frei's careful work in removing and preserving the Windows as "[r]ipping out the Windows," Urshan raises no serious argument that irreparable harm can be avoided unless the Windows are protected.

Instead, Urshan claims that simply boarding up the Windows is an alternative, less intrusive means to protecting them. (*Id.*)  This proposal is insufficient.  Urshan's alternative suggestion fails to account for Mr. Frei's assessment that Urshan's neglect of the Chapel has allowed "water [to] intrude[] into the Chapel walls" such that it "can therefore even damage Windows whose exterior diffusion layers are intact" (ECF No. 13-1 at 10, Frei Decl. ¶ 34).  This water intrusion not only poses risks of rusting frames and cracked or bulging panes, but it also causes "the stucco surrounding the Windows frames [to] become deformed and distorted," which makes it "increasingly difficult to remove the Windows without damaging them." (*Id.* at 8–9, ¶ 33.)  Nor can boarding up the Windows mitigate the danger of "freeze and thaw" damage that Mr. Ebsersoldt warns of, (ECF No. 22-2 at 3, Ebersoldt Decl.¶ 5(f).)  Simply stated, boarding up the Windows cannot avert the environmental dangers they face, and leaving them inside the Chapel is not sufficient to protect Boston College's rights while the suit is pending.

Even if boarding up the Windows could solve the issue, Urshan has no actionable plan to make it happen.  Notwithstanding its duty under its mortgage documents not to "permit impairment

10

or deterioration of" the Property and to "keep the [Property] in good repair," (ECF No. 22-1 at 23, Deed of Trust § 17), Urshan has failed to protect the Windows since abandoning the Property over five years ago. Mr. Ebersoldt's claim that he has "been involved in requesting" a grant to "board up" the Windows, (ECF No. 22-2 at 3, Ebersoldt Decl. ¶ 7), provides no insight into the timeline of this supposed grant, or even the likelihood that Urshan will *obtain* the grant funds. Urshan's proposal is therefore an inadequate alternative.

    c. *Balance of Harms*

Boston College's requested injunctive relief will protect all parties' interests during the pendency of the action. While the "balance of harms" factor here weighs only minimally in light of Boston College's strong showing as to its likelihood of success on the merits, *see Dataphase Sys., Inc. v. C L Sys., Inc.*, 620 F.2d 109, 113 (8th Cir. 1981), the balance of harms here favors Boston College.

Much of Urshan's claim regarding the risk of removing the Windows, including the purported need for a permit, is premised on the Ebersoldt declaration, even though Mr. Ebersoldt provides no foundation for the Court to accept his *ipse dixit* about the risks of removing the stained glass. Emil Frei & Associates has over one hundred years of stained glass across more than 8,000 churches; Aaron Frei himself has worked with stained glass for over thirty years. (ECF No. 13-1 at 14, Frei CV.) His expert evaluation is that temporary removal of the Windows, and storage for preservation, is the option least likely to result in harm to them. (*Id.* at 13, Frei Decl. ¶ 40.) That should settle the matter. Mr. Ebersoldt's claims about permitting requirements are unreliable hearsay: purported out-of-court statements from unnamed City of Hazelwood employees of unknown authority, submitted for the truth of the matters asserted. Moreover, *Urshan* already agreed to obtain any required permits to secure the Windows' removal. (ECF No. 13-2 at 8, Agreement.) And again, Urshan's claim that an injunction would leave the Property "nearly

11

without value," (ECF No. 22, at 16), ignores that Boston College's Motion does not here request *permanent* removal of the Windows—only interim removal during the course of litigation.

Urshan's second argument is that Boston College has acted with unclean hands, based on an email request by Boston College for Urshan to seek modification of an earlier agreement concerning two of the Windows. (*Id.*) That email merely requests for Urshan to seek a *mutual* arrangement to modify or rescind its earlier offer, which included an offer to "reimburse the donation that was made." (*See* ECF No. 22-1, at 9.) It plainly does not suggest a unilateral attempt to revoke a gift, or else the offer of reimbursement would make no sense. Of course, there is nothing unlawful or nefarious about requesting two parties to a contract to mutually alter or rescind it. *Cf. Twin River Constr. Co. v. Pub. Water Dist. No. 6*, 653 S.W.2d 682, 690 (Mo. Ct. App. 1983) ("Parties are . . . free to modify a contract after making it."). "[U]nder the unclean hands doctrine, a plaintiff is only barred because of his conduct if that conduct is the source, or part of the source, *of the equitable claim*." *Karpierz v. Easley*, 68 S.W.3d 565, 572 (Mo. Ct. App. 2002) (emphasis added). Nothing about Boston College's claim to enforce the Agreement has anything to do with a prior, unrelated transaction to which it was not a party. Boston College has acted in complete compliance and good faith with the Agreement, up until the moment Urshan unlawfully tried to back out of it. Nothing in the record shows Boston College has unclean hands.

In reality, it is Urshan that has acted inequitably. Urshan misrepresented that the Windows were unencumbered to induce the Agreement. (*Compare* ECF No. 22-1 at 5, Russell Decl. ¶ 21 (alleging a "mortgage on the entirety of the property"); *with* ECF No. 13-2 at 7, Agreement (Urshan "represent[ing] that it owns all right, title and interest in the Chapel, free and clear of liens, mortgages, or claims"). And it is *currently* in the process of seeking a form of historic registration of the Property, which could subject the Property to various municipal code restrictions. (ECF

12

No. 22-2 at 3, 5–6, Ebersoldt Decl. ¶¶ 8, 12–14).  *See, e.g.*, City of Hazelwood, MO Code §§ 415.020, 415.070 (authorizing denial of "certificate of appropriateness" related to "applications for . . alteration . . . affecting proposed or designated structures within Historic Districts").  In other words, while Urshan is accusing Boston College of acting with unclean hands, it is *simultaneously* (and belatedly) seeking to erect legal barriers to the enforceability of the Agreement.  Immediate removal of the Windows is necessary to protect Boston College's rights.

### d.  The Public Interest Favors Granting Preliminary Injunctive Relief.

Boston College pointed out in its opening Memorandum that preserving the Windows during the pendency of the litigation is essential both to protect the public interest in enforcing contracts and the public interest in keeping the Windows intact. (ECF No. 13 at 13–14.) Urshan's response gives short shrift to the rule of law by minimizing the value in "protection of alleged private contracts." (ECF No. 22 at 13.)  The rest of its response muddies the water by arguing that *transferring the Windows* is not in the public interest because of the harm that enforcing the parties' contract would supposedly cause to the surrounding community.[4]  To be clear, none of these alleged harms will come to pass if the Court denies the Motion, Urshan prevails, and the Windows are restored to the Chapel.  Urshan's objection, therefore, is not really about the temporary, narrow relief requested in the Motion—its objection is to the ultimate enforcement of the Agreement *at all*.  Such considerations are irrelevant to the public interest factor, which focuses on the interests that "might be [affected] *by a preliminary injunction.*"  *Sierra Club v. U.S. Army Corp. of Engineers*, 645 F.3d 978, 997 (8th Cir. 2011) (emphasis added).

Here, the public interest favors an injunction because, as explained above and by evidence

---

[4] Urshan's claims about the public interest are again founded on hearsay from the City of Hazelwood and the *ipse dixit* of Mr. Ebersoldt, notwithstanding that the Court has no reason to consider him a competent authority on the interests of such entities as "the Jesuit Order, the Religious History [*sic*] of the Midwest, [and] the City of Hazelwood." (ECF No. 22 at 13.)

13

in the record, immediate removal of the Windows from the Chapel is the surest way to protect them from damage. Even if the Windows are necessary to protect all of the interests Urshan claims to care about, Urshan has offered no feasible and effective alternative to keeping the Windows safe from harm. Thus, the public interest favors granting a preliminary injunction.

4. **Boston College's Motion Requests Appropriate Relief Within the Court's Discretion to Issue.**

Boston College's Motion requests the Court to enter a carefully crafted injunction that preserves all parties' rights while protecting the Windows from harm while the case proceeds. Urshan objects that the requested injunction upsets the *status quo ante* and would improperly require Urshan to secure a bond for Boston College's "planned alteration of the Windows." (ECF No. 22 at 7, 13). Urshan's first objection incorrectly frames the *status quo ante*, and its second misreads Boston College's Motion.

The *status quo ante* is "the status that existed before the violative action occurred." *Hill v. Xyquad, Inc.*, 939 F.2d 627, 631 (8th Cir. 1991). Urshan erroneously portrays the *status quo ante* as a snapshot, frozen in time, so that keeping the status quo means keeping the Windows in place. In fact, the "status" of the parties prior to Urshan's breach was that Urshan had *invited* Boston College to come remove the Windows, that Boston College's representatives had purchased plane tickets to inspect the property, that Aaron Frei and his team had already begun initial measurements for the removal project, and that Urshan freely acknowledged Boston College could enter onto the Property. (ECF No. 13-1 at 8–9, Frei Decl. ¶ 30–32; ECF No. 13-2 at 4–5, Beaumier Decl. ¶¶ 15–17; *id.* at 12–13, Beaumier Emails.) In such circumstances, where "the true status quo in this case existed when both parties were complying with their . . . agreement" a mandatory injunction to *resume* mutual compliance is proper to avoid irreparable harm. *Hill*, 939 F.2d at 631 ("When the status quo is one of business activity and the alternative of 'rest' causes irreparable harm, we have

14

favored the activity."); *see also Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 592–93 (8th Cir. 1984) (affirming preliminary injunction requiring defendant resume business operations with plaintiff to avoid economic waste).

Urshan's "bond" objection misconstrues Boston College's requested relief.  The Motion does not seek permission from the Court to, nor a bond to cover the costs for, "alteration" of the Windows.  (*See* ECF No. 12 at 3–4).  Rather, the bond is to protect Boston College's investment in protecting the Windows during the course of litigation.  Such protection which would obviously inure to Urshan's benefit if it prevails, so a bond is proper insurance for Boston College's investment.  The Court is well within its "broad discretion" to order such relief to ensure justice is done.  *See Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 898 (8th Cir. 2000) (quotation omitted).

Finally, Boston College will of course comply with any injunction bond requirement the Court issues—although the Court may "waive the bond requirement based on its evaluation of public interest in [a] specific case." *Richland / Wilkin Joint Powers Auth. v. U.S. Army Corps. of Engineers*, 826 F.3d 1030, 1043 (8th Cir. 2016).  But whether or in what amount to require a bond is not a relevant factor in the court's decision to *issue* a preliminary injunction.  *Cf. Quest Commc'ns, Corp. v. Free Conferencing Corp.*, 920 F.3d 1203, 1206 (8th Cir. 2019) (noting that a district court abuses its discretion by giving weight to "improper or irrelevant factors").  Nor does Boston College concede Urshan's claim of the proper value of such bond, as it is premised on the false assertion that a *temporary* removal of the Windows (in the even that Urshan prevails) would *permanently* prevent Urshan from obtaining tax credits or restoring the Property.

## **CONCLUSION**

All of the preliminary injunction factors favor the relief Boston College seeks.  Although Urshan has raised a scattershot of objections, none of them address the actual issues in dispute.  For the reasons above and in the previously-filed Memorandum, the Motion should be granted.

15

                          Respectfully submitted,

                          **LEWIS RICE LLC**

DATED: January 23, 2025      By:    /s/ *Winthrop B. Reed, III*
                                                    Winthrop B. Reed, III, #42840MO
                                                    T. Hunter Brown #70634MO
                                                    600 Washington Avenue, Suite 2500
                                                    St. Louis, Missouri 63101
                                                    Telephone:  (314) 444-7617
                                                    Facsimile:  (314) 612-7617
                                                    wreed@lewisrice.com
                                                    hbrown@lewisrice.com
                                                    *Attorneys for Plaintiff*