IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF BOSTON COLLEGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-1523 |
| ) | |
| URSHAN UNIVERSITY, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO STRIKE DECLARATIONS**

To bolster its opposition to Plaintiff Trustees of Boston College's Motion for Preliminary Injunction with additional "facts," Defendant Urshan University, Inc. appended three declarations to its Opposition brief. Each of these declarations—by Jeffrey Hunt (ECF No. 22-3), Jennie Russell (ECF No. 22-1), and Vincent Ebersoldt (ECF No. 22-2) (together, the "Urshan Declarations")—improperly inject hearsay into the case and lack foundation. Because the declarations are unreliable, made without personal knowledge and are replete with hearsay, they are not admissible evidence for the Court's consideration. Each declaration therefore should be struck from this case and the statements of "fact" contained therein (or referenced in Urshan's Opposition) should be disregarded.

**ARGUMENT**

The Urshan Declarations should be disregarded and struck because they contain multiple assertions that are demonstrably not based on personal knowledge. As noted in Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant

or declarant is competent to testify on the matters stated." Compliance with this rule is mandatory and "[a] court may strike an affidavit or declaration that does not comply." *CitiMortgage, Inc. v. Royal Pac. Funding Corp.*, 2017 WL 3116135 at *5 (E.D. Mo. July 21, 2017).

"Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." *El Deeb v. Univ. of Minn.*, 60 F.3d 423 (8th Cir. 1995); *Taylor v. St. Louis Cty. Bd. Of Election Comm'rs*, 2009 WL 1176298 at *5 (E.D. Mo. Apr. 30, 2009), *aff'd*, 625 F.3d 1025 (8th Cir. 2010) (striking affidavit statement "as no more than speculative and inadmissible" where the "affidavit does not clearly set forth *how* Plaintiff has personal knowledge") (emphasis added); *Riggs v. City of Owensville*, 2011 WL 1743691 at *2 (E.D. Mo. May 4, 2011) ("[T]he mere fact that an affidavit states it was made on personal knowledge does not make it admissible."). Further "[w]hen a party objects on the grounds that a fact is not supported by admissible evidence, 'the burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated.'" *Yeargans v. City of Kan. City*, 2019 WL 4247837 at *3 (W.D. Mo. Sept. 6, 2019).

<u>The Hunt Declaration</u> should be struck in its entirety. Mr. Hunt, Urshan's counsel in this litigation, submitted a three-paragraph declaration. Mr. Hunt does not provide any substantive information indicating his personal knowledge. Instead, Mr. Hunt utilizes his declaration to attach a letter from the United Pentecostal Church Development Fund (the "Fund") to Mr. Hunt in which counsel for the Fund purports to express concern about the subject property. Per black letter hearsay law, however, the letter cannot be used for the truth of the matter contained therein. As such, it and the declaration as a whole are not admissible and must be struck from the record.

<u>The Russell Declaration</u> falls victim to many of the same hearsay issues described above, and, in critical parts, reveals a lack of foundation for certain statements. For example, in paragraphs

2

7 and 8 of the Russell Declaration, Ms. Russell opines about the value of the property as it stands and the value of the property after the supposed resulting demolition of the entire Chapel should the Windows be removed. How Ms. Russell arrived at these specious statements is completely unknown. She does not indicate that she has any sort of relevant training in real estate, construction, preservation, or any other relevant qualification. Nor does she reference any documents or other information that would have led to these statements or support them. The assumption that the entire Chapel will be demolished if the Windows are removed simply lacks any evidentiary support. It is not a statement of firsthand knowledge or fact; it is instead a statement based totally on conjecture, speculation, and the declarant's own personal opinion.

Similarly, Ms. Russell states in Paragraph 18 that Urshan "understood" it "would be able to step away" from its agreement with Boston College. But Ms. Russell provides no foundation for such an opinion. She does not discuss any involvement with the drafting, negotiation, or execution of the agreement. These types of statements run throughout the Russell Declaration. Additionally, the Russell Declaration is replete with hearsay. Examples include Paragraphs 9 through 15 involving correspondence from Father Casey which Ms. Russell paraphrases; Paragraphs 16 and 17 regarding conversations with a "new developer" and "preservation" efforts of all parties; and Paragraphs 19 and 20 inserting paraphrases of an architect's recommendation and thoughts about property value.  The  balance of the declaration asserts legal positions of a third party (the Fund) about this lawsuit. Ms. Russell does not appear to have training in law, architecture, real estate, or stained glass; yet she inserts the above conclusions into the record.  Any statements on those topics in her Declaration thus similarly reflect hearsay, speculation, and conjecture about the opinions of others. Therefore, Ms. Russell's Declaration should be struck.

The Ebersoldt Declaration is the most egregious of the three declarations. It is exactly the type of declaration that this Court has previously struck on a party's motion—at the preliminary injunction stage—because it is "replete with hearsay, personal opinion, speculation, and conjecture." *PartyLite Gifts, Inc. v. Lewandowski*, 2011 WL 13254298 at *1 (E.D. Mo. Oct. 12, 2011). Mr. Ebersoldt gives, in a nutshell, his unfounded "perspective" on the events contained in the declarations. In Paragraph 6, for example, it is unclear how Mr. Ebersoldt arrives at the opinion that there is no "clear and concise documented plan for the safe removal of the windows." He says that *his* architecture firm must supervise any work, but the basis for that opinion is not stated. Mr. Ebersoldt may be an architect, but he does not profess any relevant knowledge about structural engineering or stained glass windows.[1]

A large number of the "facts" that the Ebersoldt Declaration attempts to insert into this case are the views (and potential legal opinions) of the City of Hazelwood (Paragraphs 8–11). He states, apparently after unspecified discussions with unnamed persons working for the City of Hazelwood, that the City of Hazelwood has opinions about what permits may be required for any work to the windows. Mr. Ebersoldt also tells us that the City of Hazelwood expects certain code related assurances and what the City thinks the work could cost. Every component of this discussion in the Ebersoldt Declaration is textbook hearsay, and likely double or triple hearsay. *See, e.g., Vogt v. UPS Supply Chain Solutions, Inc.*, 2006 WL 8465514 at *7–9 (W.D. Mo. March 31, 2006). Whether the personal opinions are those of Mr. Ebersoldt or the purported City of Hazelwood representatives, those opinions in the Declaration must be struck because they are pure

---

[1] Mr. Ebersoldt's lack of subject matter expertise is clear when he says, in Paragraph 5(b), that the "paint finish" of the glass panes of the Windows was "deteriorating." Stained glass is colored with metal oxides that do not deteriorate because those oxides are fused into the glass. This demonstrates a lack of understanding of the medium.

4

speculation and conjecture, without any foundation. Similarly, Mr. Ebersoldt apparently had "discussions with representatives from the Missouri State Historic Preservation Office (SHPO), the National Park Service (NPS), and . . . representatives for the National Register of Historic Places (NRHP)." (Paragraph 12). Mr. Ebersoldt then proceeds in his Declaration to provide even more hearsay from unnamed individuals from those organizations by raising the specter of a loss of *merely possible* tax credits, which, he then speculates without a basis, would result in unwanted demolition (Paragraph 15).

Finally, as if the hearsay and rife speculation about the finer points of the Windows and tax credits (for which subject matter Mr. Ebersoldt proclaims no training or expertise) were not enough, the Ebersoldt Declaration in Paragraph 18 invokes the interests of "the Jesuit Order, the Religious History of the Midwest, the City of Hazelwood and its residents." These statements are hearsay and personal opinion. Mr. Ebersoldt's statement in Paragraph 19 makes plain why this Declaration must be struck. He says:

> To determine that 13 Windows in the Chapel are more important than the historical, physical, spiritual and psychological impact of this site and the people who are connected to it is a grave mistake that should, at the very least be tabled until such time Urshan University can confirm the possibility of perpetuating the property's ongoing existence by placement in the NRHP, and preferably rejected as Boston College selfishly choosing 'collectibles' over the historic integrity of a far greater landmark that requires these windows to survive. As a Jesuit University, it certainly seems counterproductive to their own history.

This statement, and Mr. Ebersoldt's Declaration, are "replete with hearsay, personal opinion, speculation, and conjecture," precisely the type of declaration that similarly-situated courts have rejected. *PartyLite Gifts, Inc. v. Lewandowski*, 2011 WL 13254298 at *1 (E.D. Mo. Oct. 12, 2011). This Declaration should thus be struck for its failure to be based on Mr. Ebersoldt's own words and actual personal knowledge.

5

WHEREFORE, for the reasons stated herein, Boston College respectfully requests that this Court strike all three Declarations filed by Urshan in conjunction with its Opposition to Boston College's Motion for Preliminary Injunction, because all three declarations are comprised of improper hearsay, and because the declarants lack the necessary foundation to make the statements contained therein. Many of the statements made are mere opinion, speculation, and conjecture. Should the Court disagree that the Declarations should be struck in their entirety, Boston College respectfully requests that the Court strike all inappropriate paragraphs of each Declaration at the Court's discretion.

Dated: January 23, 2025

Respectfully submitted,

**LEWIS RICE LLC**

By: */s / Winthrop B. Reed, III*
Winthrop B. Reed, III, #42840
T. Hunter Brown, #70634
600 Washington Avenue, Suite 2500
St. Louis, MO 63101
314-444-7895 (Telephone)
314-612-7895 (Facsimile)
wreed@lewisrice.com
hbrown@lewisrice.com

*Attorney for Plaintiff Trustees of Boston College*