IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF BOSTON COLLEGE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:24-cv-1523-HEA |
| URSHAN UNIVERSITY, INC., | ) ) ) |
| Defendant, | ) ) |
| v. | ) ) |
| UNITED PENTECOSTAL CHURCH DEVELOPMENT FUND, INC. | ) ) ) |
| Intervenor Plaintiff. | ) |

## SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION REGARDING JURISDICTION

On February 14, 2024, the Court entered an Order requesting that the parties file supplemental briefs regarding the Court's subject matter jurisdiction. (ECF No. 40). As explained herein and through the declaration of Aaron Frei, attached hereto as Exhibit A, Plaintiff Trustees of Boston College ("BC") submits that this Court's subject matter jurisdiction is not in question. Appropriately calculated, the amount in controversy exceeds $75,000 by multiple methods of tabulation.

The Parties agree in this case—both citing *James Neff Kramper Family Farm P'ship v. IBP, Inc.* in their previously-filed papers—that the "amount in controversy is measured by the value of the object of the litigation." 393 F.3d 828, 833 (8th Cir. 2005) (quotation omitted); *see also Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977). The Parties disagree, however, whether BC has appropriately alleged that the Windows at issue are worth more

than $75,000.[1] But Defendant's concern about whether BC has sufficiently alleged the requisite amount in controversy is without merit. The Windows' value far exceeds $75,000 as BC has always maintained.

The at-hand jurisdictional inquiry turns simply on the value of the property at issue. *Id*. For unique and one-of-a-kind items such as these Windows, the "actual value" or "preferred valuation" of the Windows is best represented by the cost to reproduce or replace them. Ex. A., Frei Decl. at ¶ 21; *First Bank v. Fischer & Frichtel, Inc.*, 364 S.W.3d 216, 226 n.2 (Mo. banc 2012) (noting that for property that is "rarely, if ever, bought and sold on the open market" the "cost of replacement is the appropriate measure of damages") (citing *Leonard Missionary Baptist Church v. Sears, Roebuck and Co.*, 42 S.W.3d 833, 837 (Mo. Ct. App. 2001) (discussing church property holding special value not encapsulated by standard land-value resale price)). Although this is an action seeking specific performance rather than damages, the calculation establishing the amount in controversy is the same. *See, e.g., Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046, 1047 (11th Cir. 1993) ("When the value of property sought to be obtained by specific performance exceeds the sum which might be awarded in damages, the amount in controversy is established by the value of the property."); *see also St. Joe Minerals Corp. v. State Tax Com'n of Missouri*, 854 S.W.2d 526, 529 (Mo. Ct. App. 1993) (replacement cost may be used to estimate "true value").

Mr. Frei's expert appraisal of the Windows (Exhibit A-3 to Ex. A) explains how reproduction of the Windows requires significant skill and is a labor-intensive process. After calculating the per-square-foot cost of reproduction of all Windows present, Mr. Frei has appraised the reproduction value of the Windows to be **$1,930,737.00**. Ex. A at ¶¶ 25 & 26. The appraisal's

---

[1] Urshan only argues that BC has failed to appropriately allege the actual value of the Windows meets the threshold for the amount in controversy. Urshan has never argued that the actual value of the Windows or this lawsuit fall below the jurisdictional threshold amount.

methodology is bolstered by the fact that Mr. Frei's grandfather, the founder of Emil Frei & Associates, actually created the Windows at issue in this lawsuit. (ECF No. 13-1 at 2–3). And Mr. Frei and Emil Frei & Associates regularly work with similar ecclesiastical windows in the same style and have done so at the highest level for generations (*See* ECF No. 13-1 at 14). What's more: as significant as that appraised reproduction value may be, that dollar figure in no way accounts for the historical, artistic, and religious significance of *these* particular Windows.

BC has, without previously putting a specific number to its allegations, argued that the value of the Windows meets the threshold. BC's Complaint alleged that the fair market value exceeds $75,000. (ECF No. 1 at ¶ 10). BC also argued in its Memorandum in Support of its Motion for Preliminary Injunction, supported by evidence, that the Windows' value greatly exceeds $75,000 (ECF No. 13 at 11 and Ex. B-2). And even Urshan's own declaration by Jennie Russell details how the windows contribute "great value" to the property as a whole, whose total value is approximately $2.3 million. (ECF No. 22-1 at 2, Russell Decl., ¶ 7). According to Urshan and Russell, the Windows contribute such value that their removal "could result in the entirety of the campus to be demolished." *Id*. That statement cannot be reconciled with Urshan's nascent claim that the Windows are properly valued at less than $75,000.

Further, and as noted in prior briefing, BC and Urshan conducted an arms-length transaction under which BC agreed to a two-step financial obligation: $27,000 for the Windows, and the "expense [of] engag[ing] Emil Frei & Associates . . . to remove" the Windows. (ECF No. 13-2 at 7). BC has understood from the beginning of this case that the value of the Windows exceeds the portion of the contract price of the $27,000 that will change hands between BC and Urshan. (*See* ECF No. 13-2, Beaumier Decl. at ¶¶ 10–12). Built into BC's calculation has always been the full contract amount. That integrated, additional contract amount was originally $68,200,

3

but it has become apparent that, due to the stop-work caused by Urshan, that amount actually will be closer to $72,000. (*Id*. at ¶ 11), Ex. A, Frei Decl. at ¶ 17. Therefore, BC's total contractual obligation pursuant to their agreement with Urshan—again, not even taking into consideration the actual value of the at-issue property—is roughly $99,700. *See Fed. Mut. Ins. Co. v. Moody Station & Grocery*, 821 F.3d 973, 977 (8th Cir. 2016). So, even if the Court were to *only* consider the actual contractual value at issue in this lawsuit—the amount contemplated by this transaction— any question lingering about the amount in controversy is satisfied. Ignoring the fact that BC has in fact alleged the value of the property exceeds $75,000, even using the disfavored method of valuation resting on the contract price as discussed in Urshan's cited *Carrick Trucking, Inc. v. Lamberth* case, the statutory threshold is met. 2011 WL 1085616 (W.D. Ark. 2011) (using contract price to review the amount-in-controversy requirement only because the value of the property was not proved or alleged).

   The Court also asked in its Order whether BC would be obligated to pay Emil Frei & Associates the full budgeted cost for removal of the Windows, should the Windows ultimately not be removed. Emil Frei & Associates represents that it has incurred $28,435.00 in costs and expenses for work performed to date on BC's behalf. BC fully intends to compensate Emil Frei & Associates for these already-performed services. Before this conflict arose, BC and Emil Frei & Associates had intended to enter into a more concrete set of terms regarding anticipated expenses for removing and securing the Windows, which would have been based on the budget provided by Mr. Aaron Frei. Notwithstanding the current pause in this project, BC fully anticipates that (should work continue pursuant to a decision by this Court) it will be obligated further to Emil Frei & Associates for future costs incurred in completing the mutually-contemplated project. For the time being, however, BC's future obligations are uncertain. But, again, this Court does not need to

4

consider either the actual contract price and amounts already incurred because BC has alleged, and now more firmly proven, that the actual appraised value of the windows establishes and satisfies the amount in controversy at a much higher dollar amount. *See Hunt*, 432 U.S. at 347. This matter meets the requirements set forth in 28 U.S.C. §1332 and is properly within this Court's jurisdiction.

Dated: February 24, 2025                                  Respectfully submitted,

**LEWIS RICE LLC**

By:    */s / Winthrop B. Reed, III*
       Winthrop B. Reed, III, #42840
       T. Hunter Brown, #70634
       600 Washington Avenue, Suite 2500
       St. Louis, MO 63101
       314-444-7617 (Telephone)
       314-612-7617 (Facsimile)
       wreed@lewisrice.com
       hbrown@lewisrice.com

       *Attorney for Plaintiff Trustees of Boston College*