IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF BOSTON COLLEGE, | ) |
| | ) |
|    Plaintiff, Third Party Defendant, | ) |
| | ) |
| v. | ) Case No. 4:24-cv-1523-HEA |
| | ) |
| URSHAN UNIVERSITY, INC., | ) |
| | ) |
|    Defendant, Third Party Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED PENTECOSTAL CHURCH DEVELOPMENT FUND, INC. | ) |
| | ) |
|    Intervenor Plaintiff, Third Party Plaintiff. | ) |

# AMENDED COMPLAINT

Plaintiff Trustees of Boston College ("Boston College"), by and through undersigned counsel, hereby amends its previously filed Complaint, ECF No. 1, and submits this Amended Complaint against Defendant Urshan University, Inc. ("Urshan"), and states as follows:[1]

## INTRODUCTION

1. This contract-related case involves a mutual gift agreement ("Agreement") between Boston College and Urshan concerning the transfer of thirteen historic, stained-glass windows

---

[1] On March 14, 2025, Boston College filed its Answer, Affirmative and Additional Defenses and Counterclaim against the United Pentecostal Church Development Fund, Inc. (the "Fund"), ECF No. 50, in response to the Fund's Third-Party Complaint, ECF No. 46. Boston College does not intend that this Amended Complaint impacts, modifies, or amends in any way its allegations, defenses, claims, and counterclaims against the Fund. To the extent necessary, Boston College incorporates herein its Answer, Affirmative and Additional Defenses and Counterclaim against the Fund, ECF No. 50, as if set forth in its entirety.

Exhibit A

("Windows") located at the former St. Stanislaus Seminary campus in St. Louis County (the "Property"). (*See* Exhibit A Agreement).

2. The Windows are unique and religiously significant, beautifully portraying Jesuit saints and martyrs recognized by the Catholic Church. As such, the Windows carry particular value to Boston College, a Jesuit, Catholic educational institution seeking to preserve significant Jesuit and Catholic artifacts and history.

3. Since 1971, Urshan or its predecessor entities have owned the Property, including the Windows. However, Urshan has ceased to use the Property for educational purposes. Now, the Property lies vacant, and its structures are prone to vandalism and deterioration. Boston College negotiated the Agreement to obtain the Windows for purposes of preserving them and featuring them as part of a Boston College collection of Catholic archives and artifacts, where they will be displayed prominently on the exterior of a building on Boston College's campus.

4. Under the Agreement, Urshan was obligated to transfer the Windows to Boston College, and to exclude the Windows from any sale of the Property, in exchange for a donation from Boston College to Urshan.

5. At the eleventh hour, after Boston College had already incurred expenses in preparing to remove the Windows from the Property and engaged a contractor to safely remove and restore the Windows, Urshan repudiated the Agreement without justification, based on its desire to sell the Property—including the Windows—to non-party DFC Group, Inc. ("DFC").

6. To preserve its rights under the Agreement, and to further its interest in preserving religiously significant art for display and devotional purposes, Boston College asks that this Court enforce the Parties' Agreement.

## PARTIES, JURISDICTION, AND VENUE

7. Boston College is a prominent Catholic, Jesuit institution of higher education and a Massachusetts non-profit corporation whose principal place of business is in Chestnut Hill, Massachusetts.

8. Urshan is a Missouri non-profit corporation whose principal place of business is in Wentzville, Missouri. Its president is Brent Coltharp.

9. As a Missouri non-profit corporation whose principal place of business is located in Missouri, Urshan is subject to the general personal jurisdiction of courts in the State of Missouri, and therefore personal jurisdiction over Urshan exists in this Court.

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1333. The Parties are citizens of different states. The amount in controversy, measured either by the value of the Windows or the value of the underlying contract, the Agreement, exceeds $75,000.

11. Venue is proper in this District because Urshan resides here and because a substantial amount of the acts or omissions underlying this action occurred within this district.

## BACKGROUND FACTS

**I. A History of the Former St. Stanislaus Seminary and its Chapel Windows**

12. In 1823, Jesuit Catholic priests founded a mission school on the Property, soon named St. Stanislaus Seminary, in St. Louis County, Missouri—one of the oldest Jesuit institutions west of the Mississippi river.

13. For nearly one hundred and fifty years, St. Stanislaus Seminary played a key role in training priests for Catholic, and particularly Jesuit, ministry.

14. In 1923, St. Stanislaus Seminary erected a chapel ("Chapel") on the west portion of the Property.

3

15. The Windows comprise a total of thirteen stained-glass windows: the Rose Window—on the Chapel's façade—and the Side Windows, on either side of the Chapel.

16. Installed in the Chapel in 1923, the Side Windows depict religiously significant moments in the history of the Jesuit Order, including the life of St. Ignatius of Loyola, founder of the Society of Jesus; the call to holy orders of St. Stanislaus Kostka, a Polish Jesuit novice for whom the seminary was named; and the martyrdom of three Japanese Jesuit Martyrs, victims of religious persecution in sixteenth-century Japan.

17. The Windows are more than just beautiful artworks—they are a source of religious devotion and a pictorial representation of individuals who have lived out the Jesuit creed, *Ad Majorem Dei Gloriam* ("For the Greater Glory of God").

18. In 1971, St. Stanislaus Seminary ceased its operations, and the Property, including the Chapel, was sold to the Gateway College of Evangelism, Urshan's predecessor entity.

19. Although the Windows are religiously and artistically significant, the Chapel is not listed on the National Historic Register or subject to any federal, state, or local law that would restrict Urshan from removing and transferring ownership of the Windows.

20. From 1971 until 2019, Urshan operated on the Property as an institution of higher education.

21. In 2019, Urshan moved its operations to its current location in Wentzville, Missouri, leaving the Property vacant.

22. In the years since Urshan vacated the Property, the buildings there have deteriorated and fallen into disrepair. The Chapel, and the Windows, now stand at grave risk of increased property damage from vandalism, neglect, and adverse exposure to the elements.

## II. The Agreement to Transfer the Windows to Boston College

23. Boston College is a Jesuit, Catholic university founded in 1863. Boston College's mission incorporates its Jesuit heritage and principles.

24. In furtherance of its religious and educational mission, Boston College seeks to collect and preserve archival material, art, and artifacts that reflect Jesuit and Catholic history. It intends to display these relics for the purposes of historical education, artistic appreciation, and religious devotion.

25. In the Fall of 2023, Boston College entered discussions with Urshan concerning the acquisition of the Windows, which Boston College wanted to preserve from harm and maintain on its campus, where the Windows would be prominently displayed.

26. Over the course of negotiations, Boston College made Urshan aware of the unique, historic nature of the Windows and communicated the religious and historical significance that the Windows have for Boston College as a Jesuit institution.

27. On September 9, 2024, the parties entered the Agreement. Under the Agreement's terms, Urshan agreed to transfer the Windows to Boston College in October 2024. It further agreed to exclude the Windows from any sale of the property and to "take reasonable steps to facilitate Boston College's acquisition of the Windows. (*See* Exhibit A.)

28. In the Agreement, Urshan expressly represented that it had full title to the Property, free and clear of encumbrances. It also agreed to obtain any permits necessary to remove the Windows.

29. In exchange for the Windows, Boston College agreed to donate $27,000 to Urshan. It also agreed to engage non-party Emil Frei and Associates ("Frei"), a St. Louis company

5

specializing in the restoration and preservation of stained glass, to remove the Windows and to cover the openings in the Chapel walls that would be left behind.

30. The fair market value of the Windows substantially exceeds $75,000. However, Boston College insisted on negotiating a below-market price for the Windows that reflected (1) Urshan's desire to liquidate assets quickly, (2) the substantial risk inherent in removing and transporting antique stained glass, and (3) the expenses involved in removing and transporting the Windows to Massachusetts. At the time of negotiation, which amounts have increased across the board since the filing of the initial Compliant in this lawsuit, actual and projected expense considerations include(d):

    a. Approximately $2,300 in legal fees for negotiating a contract with Frei to remove the windows

    b. Paying Frei tens of thousands of dollars in connection with the removal and preservation of the Windows—to date, Boston College has already incurred over $16,000 due to Frei, simply for administrative costs, constructing crates for transportation, and a preliminary site visit to make rough measurements;

    c. Thousands of additional dollars in fees to restore the Windows, preserve them, and transport the Windows and to install them safely and securely in Massachusetts.

31. On September 9, 2024, Urshan, through its Chief Financial Officer Frank Buchanan, II, executed a Bill of Transfer by which Urshan "grant[ed], transfer[red], set over and convey[ed] to [Boston College] **all right, title, and interest in and to** the Windows." (Exhibit B, Bill of Transfer (emphasis added).)

### III. Urshan Breaches the Agreement

32. After the Agreement was executed on September 9, 2024, Boston College expended substantial time and resources to prepare to transfer the Windows to Massachusetts, all in reliance

6

on Urshan's representations under the Agreement. These expenses totaled over twenty thousand dollars, including but not limited to:

  a. Legal fees incurred in preparing a contract with Frei to remove the Windows;

  b. Obligations incurred to Frei, for administrative work and labor costs, in preparation for removing, restoring, and preserving the Windows;

  c. Obligations incurred to other contractors engaged to transport the Windows; and

  d. Nonrefundable travel expenses incurred in anticipation of visiting the Property to prepare for and oversee the removal of the Windows.

33. Boston College incurred all of these obligations prior to September 23, 2024.

34. On September 23, 2024, Boston College Vice President Fr. Casey Beaumier emailed Urshan's Chief Financial Officer, Frank Buchanan, II, to confirm that Frei and agents of Boston College would visit Urshan's campus the following week to measure the Windows and prepare them for removal.

35. Three days later, on September 26, 2024, Mr. Buchanan announced via email, a true and correct copy of which is attached hereto as Exhibit C, that he intended to "rescind . . . the agreement for the [Windows]."

36. When Boston College informed Mr. Buchanan that it intended to enforce the Agreement, Urshan President Brent Coltharp explained that a developer, non-party DFC and its president Steven Stogel, had proposed to purchase the Property, including the Windows.

37. Even though the Agreement specifically required Urshan to exclude the Windows from any sale of the Property, Urshan has refused to allow Boston College to remove the Windows from the Property, at least in part because Mr. Stogel has represented that removing the Windows

7

would materially diminish the chances of obtaining certain tax credits to help finance DFC's purchase of the Property.

38. DFC has acknowledged, through counsel, that it does not intend the redevelopment of the Property to maintain the Windows' use for religious purposes.

39. Urshan College continues to deny Frei and Boston College access to the Property to remove the Windows therefrom.

40. On November 14, 2024, Boston College filed its original one-count Complaint for Breach of Contract against Urshan. ECF No. 1.

41. Only after litigation had begun did Urshan—for the first time—raise a potential defense that it may not have or ever have had during the negotiation period the requisite authority to enter the Agreement or transfer the Windows to Boston College. *See* ECF Nos. 16 & 22.

## COUNT I
### (Breach of Contract against Urshan)

42. Boston College realleges and incorporates herein by reference each of the allegations contained and set forth in paragraphs 1 through 41 of this Amended Complaint as if fully set forth herein.

43. The Agreement imposed obligations on Urshan, *inter alia*, to transfer ownership of the Windows to Boston College, to maintain free and clear title to the Windows up until the Transfer, to assist Boston College and Frei in removing of the Windows, and to exclude the Windows from any sale of the Property.

44. The Agreement imposed obligations on Boston College, *inter alia*, to engage Frei to remove the Windows, at its own expense, and to pay $27,000 to Urshan after it removed the Windows from the Property.

8

45. Neither Urshan nor Boston College would have agreed to the above obligations unless it were induced by the other party's agreement to be mutually bound. Thus, the Agreement is supported by legally adequate consideration and constitutes a binding contract.

46. In an email dated September 26, 2024, Urshan, through its Chief Financial Officer Frank Buchanan, II, acknowledged that the parties had an "agreement for the stained glass windows," thus demonstrating Urshan's understanding of the Agreement as a contract rather than a statement of donative intent. (*See* Exhibit C, Buchanan Email.)

47. Even apart from the fact that the Agreement is a contract supported by consideration, Boston College acted in reasonable and foreseeable reliance on Urshan's representations that Urshan would transfer the Windows to Boston College. After the Agreement was executed and prior to Urshan's attempt to rescind the Agreement, Boston College incurred expenses in engaging Frei to remove the Windows and in preparing to transport the Windows to Massachusetts for display and also incurred legal expenses. Boston College took these acts and incurred these expenses on the basis of express representations Urshan made in the Agreement and suffered legal detriment by doing so.

48. Urshan has refused to perform the Agreement but has instead repudiated it by claiming to "rescind" the Agreement, (*see* Exhibit C, Buchanan Email), and by refusing Boston College permission to direct Frei to enter the Property and remove the Windows.

49. Boston College remains ready and willing to perform its obligations under the Agreement.

50. Because the Windows are unique and have particular historic and religious value to Boston College—which Urshan was aware of prior to the execution of the Agreement—Boston College would not be made whole by an award of monetary damages.

WHEREFORE Boston College prays that the Court enter judgment in its favor and against Urshan, order Urshan to specifically perform its obligations under the Agreement, issue an injunction requiring Urshan to obtain any necessary permits from St. Louis County, allow Frei and Boston College representatives to enter the Property and remove the Windows so that Boston College can take possession of them, award Boston College its reasonable costs incurred in bringing this action, and enter such other and further relief as the Court deems just and proper.

## COUNT II
### (Fraudulent Inducement against Urshan)

51.     Boston College realleges and incorporates herein by reference each of the allegations contained and set forth in paragraphs 1 through 50 of this Amended Complaint as if fully set forth herein.

52.     Pleading in the alternative, Urshan negotiated for approximately a year's time with Boston College before entering into the Agreement, with knowledge that it did not have the authority to transfer the windows because of an underlying security interest.

53.     Even if Urshan did not know for certain that it did not have the authority to enter the Agreement to transfer the Windows to Boston College, it should have known, based on its own prior contractual dealings with other parties, that it may not have had the necessary authority.

54.     Urshan and the Fund, who Urshan alleges holds the authority-defeating security interest, share leadership and board members, specifically, the Fund's Chairman, Dr. David K. Bernard, is also the Chancellor of Urshan University. Therefore Urshan either knew or should have known that it may have lacked authority to enter the Agreement.

55.     During negotiations leading up to the Agreement, Urshan failed to disclose any information to Boston College—which information was otherwise unobtainable to Boston College—concerning any potential lack of authority to enter the Agreement.

10

56. Urshan intended for Boston College to act on its lack of disclosure and inducement in the manner reasonably contemplated, i.e., by entering the Agreement.

57. Boston College's understanding about Urshan's authority to enter the Agreement, specifically based on Urshan's representations and withholdings, was material to Boston College's decision to enter the Agreement.

58. Boston College's understanding at the time of negotiation was reasonable given that the Agreement states that Urshan had full right, title, and interest in the Windows, such that it could perform the Agreement. Therefore, Boston College was ignorant of the falsity in this statement.

59. Urshan had an affirmative duty to correct Boston College's understanding, as confirmed by the writing in the Agreement, about Urshan's lack of authority.

60. Urshan's failure to disclose any information regarding its authority or lack thereof to enter the Agreement fraudulently induced Boston College into entering the Agreement because Boston College relied on Urshan's promises and had no reason to believe it could not rely on the same.

61. The withheld information was not otherwise reasonably available to Boston College.

62. As a result of Urshan's fraudulent inducement, Boston College has suffered significant damages. Specifically, Boston college incurred fees and costs associated with the negotiation leading up to the entry of the Agreement and has paid money to Frei with regards to the transaction and planning to remove the Windows. Further, all fees and costs associated with this lawsuit have been incurred as a direct result of Boston College's belief that Urshan had the authority to perform on the Agreement, which it was fraudulently induced into.

11

WHEREFORE Boston College prays in the alternative that the Court enter judgment in its favor and against Urshan, award Boston College all of its damages caused by Urshan's fraudulent inducement, which include all of Urshan's legal fees and costs incurred in bringing this action, and enter such other and further relief as the Court deems just and proper.

## COUNT III
### (Negligent Misrepresentation)

63. Boston College realleges and incorporates herein by reference each of the allegations contained and set forth in paragraphs 1 through 62 of this Amended Complaint as if fully set forth herein

64. Pleading in the alternative, Urshan had a duty to disclose the fact that it either did not have or may not have had the authority to enter the Agreement and perform pursuant to the terms thereof.

65. During the course of negotiations, Urshan supplied information that led Boston College to believe that it had authority to enter the Agreement and transfer the Windows, or, alternatively, Urshan withheld information to the contrary.

66. Urshan's misrepresentation and supplying of false information to Boston College about its own authority to enter the Agreement was a result of its failure to exercise reasonable care.

67. Urshan knew or should have known that, by not disclosing its potential lack of authority to enter the Agreement, Boston College would justifiably rely and reasonably act upon the terms of its negotiations and enter the Agreement.

68. Urshan's omission was intentionally made with specific respect to the negotiating parties while negotiating the Agreement.

69. Urshan intended for Boston College to enter the Agreement.

70. Boston College's knowledge of Urshan's omission would have been material to its decision to enter the Agreement.

71. Urshan's lack of authority to enter the Agreement or perform thereunder could not reasonably have been known by Boston College otherwise in the course of their dealings.

72. Urshan's negligent misrepresentation by omission caused Boston College to suffer pecuniary loss as a proximate cause thereof. Specifically, Boston college incurred fees and costs associated with the negotiation leading up to the entry of the Agreement and has paid money to Frei with regards to the transaction and planning to remove the Windows. Further, all fees and costs associated with this lawsuit have been incurred as a direct result of Urshan's negligent misrepresentation and Boston College's reasonable belief that Urshan had the authority to perform on the Agreement.

WHEREFORE Boston College prays in the alternative that the Court enter judgment in its favor and against Urshan, award Boston College all of its damages caused by Urshan's negligent misrepresentation, which include all of Urshan's legal fees and costs incurred in bringing this action, and enter such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Trustees of Boston College demands a trial by jury on all issues so triable.

Dated: March 21, 2025	Respectfully submitted,

**LEWIS RICE LLC**

By:	*/ s / Winthrop B. Reed, III*
Winthrop B. Reed, III #42840
T. Hunter Brown, #70634
600 Washington Avenue, Suite 2500
St. Louis, MO 63101
314-444-7617 (Telephone)
314-612-7617 (Facsimile)
wreed@lewisrice.com
hbrown@lewisrice.com

*Attorneys for Plaintiff Trustees of Boston College*