IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF BOSTON COLLEGE, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-1523 HEA |
| ) | |
| URSHAN UNIVERSITY, INC. ) | |
| ) | |
|     Defendant. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction, [Doc. No. 12]. Defendant opposes the Motion. For the reasons set forth below, the Motion is granted.

**Facts and Background[1]**

The Complaint alleges the following facts: according to Plaintiff, this is a breach of contract action involving a mutual gift agreement between Plaintiff and Defendant concerning the transfer of thirteen stained glass windows located in the chapel of the former St. Stanislaus Seminary campus ("the property") in St. Louis County, Missouri.  Defendant is the current owner of the campus. The Complaint

---

[1] The recitation of facts is set forth for the purposes of this Opinion only. It in no way relieves the parties of the necessary proof thereof in later proceedings.

alleges that under the agreement, Defendant was obligated to transfer the windows to Plaintiff and to exclude the windows from any sale of the property.

On September 9, 2024, the parties entered into the written Agreement. Under its terms, Defendant agreed to transfer the Windows to Plaintiff in October 2024. Defendant further agreed to exclude the Windows from any sale of the property and to take reasonable steps to facilitate Plaintiff's acquisition of the Windows. Defendant expressly represented that it had full title to the Property, free and clear of encumbrances. It also agreed to obtain any permits necessary to remove the Windows.

In exchange for the Windows, Plaintiff agreed to donate $27,000 to Defendant. It also agreed to engage non-party Emil Frei and Associates ("Frei"), a St. Louis company specializing in the restoration and preservation of stained glass, to remove the Windows and to cover the openings in the Chapel walls that would be left behind.

Plaintiff alleges the fair market value of the Windows substantially exceeds $75,000. Plaintiff insisted on negotiating a below-market price for the Windows that reflected (1) Defendant's desire to liquidate assets quickly, (2) the substantial risk inherent in removing and transporting antique stained glass, and (3) the expenses involved in removing and transporting the Windows to Massachusetts. Actual and projected expenses considerations included: a. Approximately $2,300 in

2

legal fees for negotiating a contract with Frei to remove the windows; b. Paying Frei tens of thousands of dollars in connection with the removal and preservation of the Windows; c. Thousands of additional dollars in fees to restore, preserve, transport, install them safely and securely in Massachusetts.

On September 9, 2024, Defendant, through its Chief Financial Officer Frank Buchanan, II, executed a Bill of Transfer by which Defendant "grant[ed], transfer[red], set over and convey[ed] to [Boston College] all right, title, and interest in and to the Windows."

After the Agreement was executed, Plaintiff expended substantial time and resources to prepare to transfer the Windows to Massachusetts, all in reliance on Defendant's representations under the Agreement. These expenses totaled over twenty thousand dollars.

On September 23, 2024, Boston College Vice President Fr. Casey Beaumier emailed Urshan's Chief Financial Officer, Frank Buchanan, II, to confirm that Frei and agents of Boston College would visit Defendant's campus the following week to measure the Windows and prepare them for removal. Three days later, on September 26, 2024, Mr. Buchanan announced via email, that he intended to "rescind . . . the agreement for the [Windows]."

When Plaintiff informed Mr. Buchanan that it intended to enforce the

3

Agreement, Urshan President Brent Coltharp explained that a developer, non-party AJE and its president Steven Stogel, had proposed to purchase the Property, including the Windows.

Plaintiff alleges Defendant has refused to allow Plaintiff to remove the Windows from the Property. AJE has acknowledged, through counsel, that it does not intend the redevelopment of the Property to maintain the Windows' use for religious purposes.

Defendant allegedly continues to deny Frei and Plaintiff access to the Property to remove the Windows. Defendant denies there is an enforceable agreement between the parties. It admits it owns the property and admits the windows are unique to the property.

Defendant challenges the Court's diversity jurisdiction, arguing the amount in controversy does not exceed $75,000. Further, it claims the case cannot proceed since an alleged Trustee under two deeds of trust, United Pentecostal Church Development Fund, Inc. ("the Fund"), is not a party to this action.

## Legal Standard

The Plaintiff seeks a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. The primary purpose of a preliminary injunction is to preserve the status quo until a court can grant full, effective relief upon a final hearing. *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir.

4

1984). A preliminary injunction is an extraordinary remedy, with the burden of establishing the necessity of a preliminary injunction placed on the movant. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). When deciding whether to grant a preliminary injunction, the Court "considers four factors: '(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest.'" *CEZ Prior, LLC v. 755 N Prior Ave. LLC*, No. 24-1389, 2025 WL 287795, at *2 (8th Cir. Jan. 24, 2025), (quoting *Dataphase Sys., Inc. v. C L Sys., Inc*., 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).

## Discussion

**Amount in Controversy**

Defendant argues the Court lacks subject matter jurisdiction. Defendant contends Plaintiff has failed to establish the amount in controversy exceeds $75,000.00, a necessary requirement of 28 U.S.C. § 1332.

"Diversity jurisdiction requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants." *Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp*., LLC, 932 F.3d 1102, 1104 (8th Cir. 2019) (citation and internal quotations omitted). The party seeking diversity jurisdiction has the burden to establish the amount in controversy requirement. *Bank of*

5

*America v. Pennington-Thurman*, No. 4:15-CV-381 RLW, 2015 WL 5518728, at *1 (E.D. Mo. Sept. 17, 2015).

To meet its burden regarding the amount in controversy, the removing party "must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." *Jackson County, Missouri v. Trinity Indus., Inc.*, No. 16-CV-0004-W-FJG, 2016 WL 10650701, at *2 (W.D. Mo. Feb. 29, 2016). "To satisfy the preponderance of the evidence standard, the party seeking removal must offer 'some specific facts or evidence demonstrating that the jurisdictional amount has been met.' " *Id*. (citation omitted).

There is no dispute that complete diversity of citizenship exists in this case. Therefore, the only question before the Court at this time is whether the amount in controversy is over $75,000.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977).

"'[T]he amount in controversy is measured by the value to the plaintiff of the right sought to be enforced.' *Federated Mut. Ins. Co. v. Moody Station & Grocery*, 821 F.3d 973, 977 (8th Cir. 2016) (quoting *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 821 (8th Cir. 2011) ). This value is assessed at the time of filing

6

the action. *Scottsdale*, 620 F.3d at 931." *Am. Fam. Mut. Ins. Co. v. Vein Centers for Excellence, Inc.*, 912 F.3d 1076, 1081 (8th Cir. 2019).

In this case, Plaintiff requests specific performance of the agreement between the parties for the transfer of historic stained-glass windows depicting the history of the Jesuits. Defendant argues the amount must be measured by the consideration agreed upon by the parties, *i.e.*, $27,000. Plaintiff contends under the circumstances of this this case, the agreed upon price is not the salient number but rather the value of the windows to Plaintiff, urging the exception to the general rule.

The general rule in Missouri requires that the parties show a property's market value, *Peterson v. Cont' Boiler Works, Inc.*, 783 S.W.2d 896, 900 (Mo. 1990), as the measure of damages. *Leonard Missionary Baptist Church v. Sears, Roebuck and Co.*, 42 S.W.3d 833, 836 (Mo.App. E.D.2001). However, there is an exception to the general rule of fair market value for certain categories of property that are not bought and sold on the open market. *Id*. at 837. For certain categories of property, termed "special purpose property," such as the property of nonprofit, charitable, or religious organizations, there will not generally be an active market from which the diminution in market value may be determined. *Id*. at 836. This is true of such properties as school yards, church yards, college campuses, buildings under construction, and cemeteries. *Id*; *Diggins Baptist Church v. Church Mut. Ins.*

7

*Co.*, No. 12-4130-CV-S-AGF, 2013 WL 12142649, at *1 (W.D. Mo. Aug. 30, 2013) *Twin Chimneys Homeowners Ass'n v. J.E. Jones Const. Co.*, 168 S.W.3d 488, 503 (Mo. Ct. App. 2005). In current matter, it is clear that the windows fall within the excepted types of items not subject to the fair market value analysis. Clearly, there is no open market for antique religious stained-glass windows which would give rise to a fair market value assessment. Here, Plaintiff has set out sufficient claims of the value of the windows to Plaintiff.

**Mortgage Holder Necessary Party**

Defendant Urshan urges dismissal for failure to join a necessary party or order the missing party joined in this action. According to Defendant, The United Pentecostal Church Development Fund, Inc. d/b/a Church Loan Fund, ("Fund"), holds a mortgage on the property and has advised it does not consent to the removal of the windows because it would impair its collateralization for the loan to Urshan.

On March 17, 2025, the Court granted the Fund's Motion to Intervene. Accordingly, Defendant's argument has been rendered moot.

**Likelihood of Success on the Merits**

The likelihood of success is the most important factor. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). This factor directs courts to ask whether the party requesting a preliminary injunction has a "fair

chance of prevailing." *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc).

Plaintiff's Complaint[2] alleges Defendant breached the Agreement between Plaintiff and Defendant for the Windows. It claims Defendant accepted its offer to give Urshan $27,000 in return for Urshan giving Plaintiff the Windows in question. Urshan counters that it was going to gift the Windows to Plaintiff and Plaintiff was going to give Urshan a gift of $27,000. Urshan further argues that it could rescind its gift of the Windows any time before that actual transfer of the Windows, and that it notified Plaintiff that the gift had been revoked.

The three essential elements of a valid contract are offer, acceptance, and bargained for consideration. *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014). "Consideration consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Bridgecrest Acceptance Corp. v. Donaldson*, 648 S.W.3d 745, 752 (Mo. 2022), as modified (Aug. 30, 2022).

The record before the Court establishes that on September 9, 2024, Plaintiff sent an email to Urshan's Chief Financial Officer Frank Buchanan, II wherein the

---

[2] On March 21, 2025, Plaintiff filed a Motion to File an Amended Complaint. Defendant has not yet responded to the Motion as the time for which has not yet expired. The Proposed Amended Complaint contains a Count for Breach of Contract. Both the Complaint and the Proposed Amended Complaint contain Counts for Breach of Contract.

terms of the Agreement were set out. Emil Frei and Associates Company would remove 12 large arched stained-glass windows and the large rose stained-glass window located in the Chapel on Urshan's campus. Boston Collage would take title to the Windows in consideration of the donation to Urshan in the amount of $27,000.  Urshan agreed to cooperate with Boston College and Frei in connection with the removal. Mr. Buchanan agreed and accepted the Agreement. He also executed a "Bill of Transfer" on September 9, 2024, wherein Urshan University transferred all of Urshan University's right, title and interest in and to certain windows that are a part of the St. Stanislaus Chapel on Urshan's property.

On September 26, 2024, Mr. Buchanan sent an email wherein he informed Fr. Beaumier that Urshan University "must rescind the bill of transfer and agreement for the stained-glass windows." Mr. Buchanan stated in his email that he had learned a buyer has been found who planned on restoring and preserving the school, including the windows.

Based on the record before the Court at this time, it appears Plaintiff is likely to succeed on the merits of its breach of contract claim. There appears to be an enforceable contract since the essential elements of a contract exist: offer-Boston College offers to remove and restore the stained-glass windows, Urshan's acceptance of the offer, and consideration-$12,000 from Boston College in exchange for the windows. Urshan "rescinded" the transfer and Agreement. Boston

10

College incurred expenses and did not receive the benefit of its bargain, *i.e.* the Windows. This factor favors an injunction

**Irreparable Harm**

"An irreparable harm occurs when "a party has no adequate remedy at law." *Sleep No. Corp*. [*v. Young*], 33 F.4th [1012,] 1018 [(8th Cir. 2022)]. To establish the threat of irreparable harm, a party 'must show harm that is certain and great and of such imminence that there is a clear and present need for equitable relief.' *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024)." *United States v. Iowa*, 126 F.4th 1334, 1352 (8th Cir. 2025). To demonstrate a sufficient threat of irreparable harm, the moving party must show that there is no adequate remedy at law; that is, that an award of damages cannot compensate the movant for the harm. *KC Processing Co., LLC v. Marshall*, No. 4:25-CV-00059-DGK, 2025 WL 333805, at *1 (W.D. Mo. Jan. 29, 2025).

Plaintiff argues it is suffering, and will continue to suffer, irreparable harm without a preliminary injunction requiring the removal of the windows from the chapel. Defendant recognizes the continuing harm that is occurring to the windows through deterioration over the years. Defendant suggests; however this can be remedied through less intrusive preservation methods.

The Windows are undisputably unique. Indeed, the unique and historic nature of the Window is recognized in Defendant's reason for "rescinding" the

11

Agreement with Plaintiff. Moreover, both parties recognize the current state of the Windows is fragile and at risk of further deterioration, possibly being broken or becoming irreparable. Because of this, money damages cannot accurately compensate Plaintiff for the loss of the Windows themselves based on their uniqueness. This injunction factor favors Plaintiff.

**Balance of the Harms**

The balance between Plaintiff's harm and the injury that granting the injunction will inflict on other parties and the public interest. Must also be analyzed. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013); see also *Dataphase* Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). The inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Systems, Inc.*, 640 F.2d at 113; *LaBelle Dairy, LLC*, v. *Sharpe Holdings, Inc.* No. 2:25-CV-14 HEA, 2025 WL 900572, at *4 (E.D. Mo. Mar. 25, 2025).

Plaintiff's urged injunction, requiring removal of the Windows and storing them somewhere other than the Chapel, does not maintain the *status quo*. Plaintiff says nothing about what effect removal of the Windows will have on the integrity of the Chapel after removal nor how the Windows can be replaced in the Chapel if Plaintiff is not successful. Currently, the Windows are secured in the Chapel, *albeit*

in a fragile state. Maintaining the *status quo* requires the Windows to remain in the Chapel with steps taken to secure them from further deterioration.

Maintaining the current *status quo* with protective measures taken to prevent further damage to the Windows favors Plaintiff and causes minimal harm to Defendant.

Lastly, the public interest favors injunctive relief. The current state of the Windows is that they are in jeopardy of being destroyed through deterioration, vandals, water, etc. the public has an interest in preserving historically significant buildings and art. Requiring protection of the Windows ensures the Windows will be preserved. Moreover, the public has an interest in enforcing arms-length transactions.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for a preliminary injunction against Defendant Urshan, [Doc. No. 12], is GRANTED.

**IT IS FURTHER ORDERED** Defendant shall, within 21 days from the date of this Opinion, Memorandum and Order, secure the Windows from water, vandalism and further deterioration as contemplated by Defendant's response to the Motion for Preliminary Injunction.

**IT IS FURTHER ORDERED** that Defendant Urshan is prohibited from taking any action to sell or otherwise divest itself of any ownership interest it has in the property during the pendency of this matter.

**IT IS FURTHER ORDERED** that Plaintiff shall post security in the amount of One Hundred Thousand Dollars ($100,000) with the Clerk of the Court by April 18, 2025, in cash or through a Court-approved surety. See Fed. R. Civ. P. 65(c).

Dated this 10th day of April,  2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE